# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Ruback, 2013 IL App (3d) 110256**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER A. RUBACK, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0256 |
| Filed | April 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction and sentences for three counts of predatory criminal sexual assault of a child were upheld, but the fine imposed pursuant to section 5-9-1.15 of the Unified Code of Corrections was vacated on the ground that the charged offenses occurred prior to the date the statute went into effect. |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 08-CF-591; the Hon. Kathy Bradshaw-Elliott, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

Counsel on
Appeal

Jay Wiegman, of State Appellate Defender's Office, of Ottawa, for appellant.

John J. Boyd, State's Attorney, of Kankakee (Terry A. Mertel and Thomas D. Arado, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Holdridge specially concurred, with opinion.
Justice Schmidt specially concurred, with opinion.

## OPINION

¶ 1      After a jury trial, the defendant, Christopher A. Ruback, was found guilty of three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008)). The defendant was sentenced to three consecutive terms of 12 years' imprisonment and was ordered to pay a $500 fine. On appeal, the defendant argues that the trial court erred by: (1) barring admission of the first part of Amanda Ruback's statement to the police; and (2) imposing a $500 fine where the statute authorizing the fine did not go into effect until after he committed the offense. We vacate the $500 fine and, while we disagree on the analysis, we affirm the remainder of the circuit court's judgment.

¶ 2                                  FACTS

¶ 3      On September 19, 2008, the defendant was charged by indictment with three counts of predatory criminal sexual assault of a child. 720 ILCS 5/12-14.1(a)(1) (West 2008). The case proceeded to a jury trial. The State began by calling Mary H. to testify. Mary H. testified that she was the victim's older sister, and since July 2008, the victim had lived with her. Before the victim moved into her house, the victim lived with the defendant and his wife, Amanda.

¶ 4      Approximately two weeks after the victim moved in, Mary H. was poking fun at her because she had to take a sex education class. The victim responded that the defendant and Amanda had already taught her about sex. The defendant and Amanda purportedly used a game called "Stripopoly," to teach the victim about sex. While playing the game, the victim drew a card that directed her to give a "blow job to the male on her right." The victim indicated to Mary H. that she performed the act. Thereafter, the defendant drew a card that instructed him to "eat out the woman to his right." The victim watched as the defendant performed oral sex on Amanda.

¶ 5      On another occasion, the defendant had sexual intercourse with the victim while Amanda

-2-

rubbed her shoulders, and encouraged her to relax. The victim also reported that the defendant kept her home from school and made her watch adult movies and practice masturbation. At the end of the conversation, Mary H. filed a police report.

¶ 6 The victim testified that in the fall of 2007, she lived with the defendant and Amanda, and she was in the sixth grade. During October or November 2007, the victim's teacher sent a notice home that she would be attending a sex education class. Amanda told the victim that she and the defendant did not want "some quote crack teacher teaching [the victim] this." Amanda asked the victim if it was all right if she and the defendant taught her about sex. The victim agreed.

¶ 7 One night, the defendant woke the victim and brought her downstairs where the game "Stripopoly" was set up. The defendant and Amanda explained that the game was like Monopoly, but if you went to jail you had to remove an article of clothing, and instead of community chest cards, the player picked up a card with an instruction to perform a sex act on the person to their right or left. After several rounds, the victim was left wearing only her t-shirt and bra, and she picked up a card that instructed her to give the defendant a "blow job." The victim was unfamiliar with the sex act, and Amanda demonstrated on the defendant. Amanda then directed the victim to perform oral sex on the defendant. The victim did as she was instructed.

¶ 8 On other occasions, the defendant or Amanda woke the victim and took her to their bedroom to watch pornographic movies. While one of the movies was playing, the defendant and Amanda asked the victim if she knew how to "eat out a girl." The defendant demonstrated by performing oral sex on Amanda. Afterwards, he instructed the victim to perform oral sex on Amanda. On a different occasion, the defendant and Amanda performed oral sex on the victim. The defendant also made the victim perform oral sex on him.

¶ 9 During the fall of 2007, Amanda kept the victim home from school on several days. After the victim's brother and niece left for school, the defendant and Amanda called her into their bedroom. On three or four of these days, the defendant attempted to have vaginal intercourse with the victim. The defendant began by performing oral sex on the victim, and then he tried to insert his penis inside the victim's vagina. During several of the defendant's attempted penetrations, the victim complained of a sharp pain, and the defendant stopped. However, the defendant once placed the tip of his penis inside of the victim's vagina while the victim lay in Amanda's lap, and Amanda rubbed the victim's shoulders to relax her.

¶ 10 The victim stated that she was afraid to tell the defendant not to perform the sexual acts because she did not want to get yelled at. The incidents stopped in December 2007.

¶ 11 Next, the State called Amanda to testify. Amanda testified that she was the defendant's wife and the victim was her half-sister. Amanda acquired custody of the victim when she was four years old. However, the victim left her home in February 2008, after the defendant was arrested on an unrelated charge. Additionally, Amanda pled guilty to two counts of predatory criminal sexual assault of a child on February 1, 2010, and received a sentence of 12 years' imprisonment. The charge involved sexual misconduct with the victim in this case.

¶ 12 Amanda stated that the topic of sex was never discussed between the defendant and the victim. Amanda denied observing the defendant have sex with the victim, and she stated that

she did not perform sex acts on the victim. In response, the State introduced Amanda's prior inconsistent statement from her plea agreement hearing. At the plea, Amanda admitted that she awoke the victim at night and kept her home from school so that she and the defendant could engage in sexual acts with the victim. Amanda demonstrated sex acts for the victim and then instructed the victim to perform the acts on the defendant. Amanda observed the defendant attempt to have sexual intercourse with the victim while she rubbed the victim's back and told her it was all right.

¶ 13    The State also introduced Amanda's prior inconsistent statement from her August 28, 2008, police interview. Amanda testified that she did not remember the questions that the detectives had asked her, but she remembered that the interview was the first time she learned of the allegations against the defendant. Amanda eventually admitted that she had told the detectives that she walked in on the defendant while he and the victim were performing oral sex on each other. However, she noted that this occurred "after a half an hour of them telling me what was going on and what [the victim] was saying." She agreed that she told the detectives the victim was forced to perform oral sex on her and the defendant. At the conclusion of the State's examination, Amanda stated that she told the detectives that she intended to leave the defendant, but she did not follow through with the divorce. Amanda last communicated with the defendant, via letter, one month before trial.

¶ 14    During cross-examination, Amanda stated that during the police interview, the first time she was asked if she had engaged in sexual misconduct with the victim, she denied doing so. The State objected on grounds that the testimony was inadmissible as a prior consistent statement. Defense counsel argued that Amanda's prior consistent statement was admissible to rebut the State's charge that Amanda was motivated to lie. Defense counsel noted that the State had impeached its own witness, implying that Amanda was motivated to lie. The trial court reasoned that Amanda's testimony pertaining to her recent correspondence with the defendant implied that she had a motive to lie. The trial court initially allowed the testimony to rebut a charge of recent fabrication and allowed the defendant some leeway on the issue because it was not "real clear based on the two exceptions." The trial court further required that defense counsel ask specific questions about Amanda's denials from the beginning of the police interview. The court allowed defense counsel to review Amanda's video-recorded interview before the trial resumed the following morning.

¶ 15    The next morning, defense counsel continued cross-examination. As defense counsel inquired about the first part of Amanda's police interview, the State objected. The State argued that Amanda's police interview constituted one statement and it had already been admitted as a prior inconsistent statement. As a result, Amanda's denials from the beginning of the interview were inadmissible under the prior consistent statement rule. Following an offer of proof, the trial court agreed with the State that Amanda's police interview was one statement and it could not be split into two parts. The court concluded that Amanda's denials were inadmissible prior consistent statements. However, it allowed defense counsel to ask Amanda if the detectives had given her the information regarding the specific sex acts. Thereafter, Amanda testified that the detectives told her during the interview that the victim had implicated her and the defendant in sexual misconduct.

¶ 16    During cross-examination by defense counsel, Amanda testified that she entered into the

-4-

plea agreement because she was told that "it would be the best thing for [her]" and if she went to trial, she would "get the maximum sentence." Amanda maintained that she did not engage in sexual misconduct with the victim and she did not observe the defendant having sexual relations with the victim.

¶ 17    Following Amanda's testimony, the State called Detective Robert Gray to testify. Gray stated that he conducted a video-recorded interview with Amanda on August 28, 2008. During the interview, Amanda indicated that she saw the defendant perform oral sex on the victim, and she also observed the defendant performing oral sex on the victim while the victim performed oral sex on the defendant. At the end of Gray's testimony, the State played a video recording that contained several clips from Amanda's interview. In the recording, Amanda admitted that she observed the defendant perform various sex acts on the victim.

¶ 18    The defendant testified that he treated the victim as his own child, but he was not involved in her school work and school activities because he worked 60 hours a week. In the spring of 2007 he started using cocaine and he was arrested for illegal possession of drugs on February 7, 2008. The defendant later pled guilty to the offense. The defendant testified that he suffered from impotency as a result of his cocaine use. The defendant denied playing "Sexopoly" with the victim or engaging in acts of oral sex or sexual intercourse with the victim.

¶ 19    After closing arguments, the jury found the defendant guilty of three counts of predatory criminal sexual assault of a child. The trial court sentenced the defendant to three consecutive 12-year terms of imprisonment and imposed a $500 fine under section 5-9-1.15 of the Unified Code of Corrections (Code) (730 ILCS 5/5-9-1.15 (West 2008)). The defendant appeals.

¶ 20                                    ANALYSIS
¶ 21                          I. Prior Consistent Statement
¶ 22    The defendant argues that the trial court erred in refusing to admit the first part of Amanda's police interview. The defendant contends that the statement was admissible as a prior consistent statement to rebut a charge of recent fabrication. Alternatively, the defendant argues that the completeness doctrine required admission of the excluded portions of Amanda's police interview because it was necessary to place her inconsistent statement in its proper context.

¶ 23    The parties spend some time in their briefs discussing whether Amanda's police interview consisted of two statements or a single statement with contradictory portions. I find that this discussion is irrelevant, as the application of the present rules wholly resolves the issue.

¶ 24    The admission of evidence lies within the sound discretion of the trial court. *People v. Wilson*, 2012 IL App (1st) 101038. On appeal, the trial court's decision to admit evidence is reviewed for an abuse of discretion. *People v. Becker*, 239 Ill. 2d 215 (2010). A trial court abuses its discretion where its decision to admit evidence is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the position. *Id.*

¶ 25                    A. Admission of Prior Consistent Statement Evidence

¶ 26      Generally, a witness cannot be corroborated on direct examination by admission of a prior statement that is consistent with her trial testimony. *People v. Heard*, 187 Ill. 2d 36 (1999). Such statements are inadmissible hearsay and may not be used to bolster a witness's testimony. *People v. Belknap*, 396 Ill. App. 3d 183 (2009). However, a prior consistent statement may be introduced to rebut an express or implied charge on cross-examination that (1) the witness is motivated to testify falsely or (2) her testimony is a recent fabrication. *Id.* Given that "judicial divergence of views is most vigorous and the opposing reasons most plausible" when applying these exceptions (4 John H. Wigmore, Evidence § 1126, at 258 (Chadbourn rev. ed. 1972)), I begin my analysis with some background on the exceptions.

¶ 27                              1. Common Law Foundation

¶ 28      In 1853, our supreme court acknowledged that there was some authority that former statements of a witness

> "may in some instances be introduced for the purpose of sustaining his testimony; as where he is charged with testifying under the influence of some motive prompting him to make a false statement, it may be shown that he made similar statements at a time when the imputed motive did not exist, or when motives of interest would have induced him to make a different statement of facts. So in contradiction of evidence tending to show that the witness's account of the transaction was a fabrication of a recent date, it may be shown that he gave a similar account before its effect and operation could be foreseen." *Gates v. People*, 14 Ill. 433, 438 (1853).

¶ 29      In 1972, our supreme court restated the rule directing that a witness's prior consistent statement may be admitted, noting that to

> "rebut a charge or an inference that the witness is motivated to testify falsely or that his testimony is of recent fabrication, evidence is admissible that he told the same story before the motive came into existence or before the time of the alleged fabrication." *People v. Clark*, 52 Ill. 2d 374, 389 (1972).

¶ 30      Our supreme court's decisions since *Clark* have stated two different versions of the prior consistent statement exceptions. In *People v. Williams*, 147 Ill. 2d 173 (1991), the court stated in congruence with *Clark* that:

> "[P]rior consistent statements are admissible to rebut a charge or an inference that the witness is motivated to testify falsely or that his testimony is of recent fabrication, and such evidence is admissible to show that he told the same story before the motive came into existence *or before the time of the alleged fabrication.*" (Emphasis added.) *Williams*, 147 Ill. 2d at 227.

The *Williams* decision gave rise to a line of appellate decisions that determined there were two distinct exceptions to the prior consistent statement rule. See *People v. Antczak*, 251 Ill. App. 3d 709, 714 (1993) (recognizing that charges of recent fabrication and motive to falsify are two separate exceptions); *People v. Lambert*, 288 Ill. App. 3d 450 (1997) (reaffirming

that charges of recent fabrication and motive to testify falsely are separate exceptions); *People v. Mullen*, 313 Ill. App. 3d 718 (2000) (charges of recent fabrication and charges of a motive to testify falsely are separate exceptions to the rule which prohibits prior consistent statements); *People v. Richardson*, 348 Ill. App. 3d 796 (2004) (acknowledging that the prior consistent statement rule provides for two separate exceptions).

¶ 31    More recently, our supreme court stated that "[a]n exception to this rule applies when it is suggested that the witness had recently fabricated the testimony or had a motive to testify falsely, and the prior *statement was made before the motive to fabricate arose*." (Emphasis added.) *People v. Cuadrado*, 214 Ill. 2d 79, 90 (2005). In support of this version of the rule, our supreme court cited its decision in *People v. Heard*, 187 Ill. 2d 36 (1999), which stated a similar, truncated version of the exception. The court in *Heard*, in turn, relied upon its ruling from *People v. Harris*, 123 Ill. 2d 113 (1988), which stated:

> "A narrow exception to this rule has been created where it is charged that the testimony is recently fabricated or that the witness has some motive for testifying falsely. Then a prior consistent statement may be admitted, but only if made before the motive to fabricate arose." *Harris*, 123 Ill. 2d at 139.

However, *Harris* further stated:

> "In such an instance, proof that the witness gave a similar account of the occurrence, when the motive to lie was nonexistent, or before the effect of the account could be foreseen, makes the prior consistent statement admissible." *Harris*, 123 Ill. 2d at 140 (also quoting an illustration of the rule from Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 611.14 (4th ed. 1984)).

¶ 32    I note that some of the cases decided since *Clark* abbreviated the prior consistent statement exception, but did not reverse or overrule the court's holding. Examining the *Clark* rule, I find that its disjunctive language created two separate exceptions to the prior consistent statement rule. See *Clark*, 52 Ill. 2d at 389; see also *Williams*, 147 Ill. 2d 173; *Antczak*, 251 Ill. App. 3d 709; *Lambert*, 288 Ill. App. 3d 450; *Mullen*, 313 Ill. App. 3d 718; *Richardson*, 348 Ill. App. 3d 796. Thus, I will review the application of both exceptions to the present case.

¶ 33                            2. Application of the *Clark* Rule

¶ 34    I begin my analysis noting that there must be an express or implied attack that the witness's testimony is the result of a motive to falsify or a recent fabrication. *Belknap*, 396 Ill. App. 3d 183. Prior consistent statements are admitted solely for rehabilitative purposes, not as substantive evidence. *Id.*

¶ 35                                a. Motive to Falsify

¶ 36    The record in the present case indicates that the State charged at trial that Amanda had motivation to falsify her testimony. Initially, I note that Amanda's allegedly falsified testimony was elicited while she was testifying as the State's witness, and she was treated as a hostile witness. Ill. S. Ct. R. 238(b) (eff. Apr. 11, 2001); R. 433 (eff. Apr. 1, 1982).

Amanda denied participating in sexual misconduct with the victim and stated that she did not observe the defendant sexually assault the victim. The State introduced Amanda's prior statements to the police, in which she implicated the defendant in the sexual misconduct. See *People v. Leonard*, 391 Ill. App. 3d 926 (2009) (a party may attack a hostile witness by impeaching her with evidence of a prior inconsistent statement). The State also adduced testimony that Amanda was married to the defendant and that she had communicated with him one month before trial, implying that she had a motive to testify falsely to protect the defendant. Therefore, I find that the State charged that Amanda was motivated to falsify her testimony.

¶ 37    However, the mere charge or implication that Amanda was motivated to testify falsely is insufficient to justify the admission of her prior consistent statement. In order for Amanda's prior consistent statement to be admitted, the defendant had to show that Amanda's consistent statement was made before the motive to falsify arose. See *Antczak*, 251 Ill. App. 3d 709. The defendant is unable to show that Amanda did not have a motive to testify falsely when she initially denied the allegations to the police. Amanda was implicated in the felonious conduct, and she was married to the defendant. See *People v. Terry*, 312 Ill. App. 3d 984 (2000) (witness's prior consistent statements were inadmissible because they were not made until after he had been questioned by the police; because witness may have been a suspect at that point, he had motive to testify falsely). Therefore, she had at least two separate motivations to deny the charges at the outset of the investigation. As a result, her statements from the beginning of the police interview were inadmissible to rebut a charge that she was motivated to testify falsely.

¶ 38                                      b. Recent Fabrication

¶ 39    Although the defendant argues that Amanda's prior consistent statement was admissible to rebut a charge of recent fabrication, I find that the State did not levy a charge of recent fabrication against Amanda. Generally, a witness's prior consistent statement may be admitted to rebut an express or implied charge that the witness's testimony was of recent fabrication, so long as the witness told the same story before the time of the alleged fabrication. *Lambert*, 288 Ill. App. 3d 450; 4 John H. Wigmore, Evidence § 1129, at 270-71 (Chadbourn rev. ed. 1972) ("[t]he effect of the evidence of consistent statements is that the supposed fact of not speaking formerly, from which we are to infer a recent contrivance of the story, is disposed of by denying it to be a fact, inasmuch as the witness did speak and tell the same story"); Michael H. Graham, Graham's Handbook of Illinois Evidence § 801.12, at 799 (10th ed. 2010) ("Charges of improper motive, improper influence, or recent fabrication are to be treated separately. Accordingly, a prior consistent statement is admissible to rebut a charge of recent fabrication even if the prior consistent statement is inadmissible to rebut a separate charge of improper motive because the prior consistent statement was made during the time the improper motive is alleged to have existed."). The "recent fabrication" is the witness's trial testimony. *People v. Deavers*, 220 Ill. App. 3d 1057, 1072 (1991). However, the mere fact that a witness's testimony has been discredited is not sufficient reason to allow the use of her prior consistent statement, and such an expansion of the exception would "swallow the rule." *People v. Wetzel*, 308 Ill. App. 3d 886, 895

(1999). "If the only requirement necessary to trigger the exception was the existence of an inconsistent statement made prior to trial, the exception to the rule relating to the use of prior consistent statements would negate the rule *in toto*." *People v. Bobiek*, 271 Ill. App. 3d 239, 244 (1995). Therefore, the record must contain an apparent charge or suggestion that the witness's testimony was a recent fabrication. See, *e.g.*, *Waller v. People*, 209 Ill. 284, 286-87 (1904) (the defense impeached a witness with certain former narrations of the witness that omitted an essential fact, and the State was properly allowed to present rebuttal testimony that the witness at the time of the occurrence made a statement including that essential fact; there was no claim that the witness made different or contradictory statements but only that he had recently fabricated the story); see also *People v. Engle*, 351 Ill. App. 3d 284, 289 (2004) ("[g]enerally, an inference that a witness's in-court testimony is of recent fabrication arises from negative evidence that the witness did not speak of the matter at a time when it would have been natural for him to do so"). Such a charge was not present in the instant case. *People v. Goff*, 299 Ill. App. 3d 944, 950-51 (1998); *People v. West*, 263 Ill. App. 3d 1041, 1048 (1994); *People v. Davis*, 130 Ill. App. 3d 41, 56-57 (1984).

¶ 40　　Although, appropriately, there was no jury instruction on the use of prior inconsistent statements for only the limited purpose of deciding the weight to be given to Amanda's testimony (see Illinois Pattern Jury Instructions, Criminal, No. 3.11 & Committee Note (4th ed. 2000); Ill. R. Evid. 801(d)(1)(A) (eff. Jan. 1, 2011)), the prior inconsistent statement evidence substantively served, in part, to show the inconsistency in her testimony. See *Wetzel*, 308 Ill. App. 3d 886. Contradiction alone cannot give rise to a charge of recent fabrication or, as suggested by the *Wetzel* and *Bobiek* decisions, the exception would swallow the rule. See *West*, 263 Ill. App. 3d at 1048; see also *Moore v. Anchor Organization for Health Maintenance*, 284 Ill. App. 3d 874, 885 (1996). Although the trial court and the parties referenced this exception, the record does not contain an express or implied charge that Amanda's testimony was a recent fabrication. Therefore, I conclude that Amanda's prior consistent statement was inadmissible under this exception.

¶ 41　　　　　　　　　　　　B. Completeness Doctrine

¶ 42　　Next, the defendant argues that Amanda's statements denying the sexual assault charges were admissible under the completeness doctrine. The State argues that the defendant has waived review of this issue because he did not raise it at trial. However, defense counsel argued for admission of Amanda's prior consistent statement on grounds that admission was necessary to show that she was not motivated to lie while testifying. Thus I find that the defendant has not waived review of this argument. See *People v. Heider*, 231 Ill. 2d 1 (2008) (there was no forfeiture where the trial court had an opportunity to review the claim that was later raised on appeal).

¶ 43　　The completeness doctrine provides that " ' "if one party introduces part of an utterance or writing the opposing party may introduce the remainder or so much thereof as is required to place that part originally offered in proper context so that a correct and true meaning is conveyed to the jury." ' " *People v. Moore*, 2012 IL App (1st) 100857, ¶ 48 (quoting *People v. Williams*, 109 Ill. 2d 327, 334 (1985), quoting *Lawson v. G.D. Searle & Co.*, 64 Ill. 2d 543,

556 (1976)); Ill. R. Evid. 106 (eff. Jan. 1, 2011); see also Michael H. Graham, Graham's Handbook of Illinois Evidence § 106.1 (10th ed. 2010). The doctrine allows a party to place a statement in context to afford the jury the means to make an informed assessment of its import. *People v. Pietryzk*, 153 Ill. App. 3d 428 (1987). The remaining part of the missing recording is admissible only when in fairness it is required to prevent the jury from receiving a misleading impression as to the nature of the introduced statement. *People v. Weaver*, 92 Ill. 2d 545 (1982). However, the remainder of the conversation or statement must concern what was said on the same subject at the same time. *People v. Patterson*, 154 Ill. 2d 414 (1992).

¶ 44     Analogously, when a witness's prior inconsistent statement is introduced, the two exceptions discussed *supra* permit the introduction of the remainder of a statement to prove, explain, or qualify the making of the inconsistent statement. *People v. Williams*, 147 Ill. 2d 173 (1991); Michael H. Graham, Graham's Handbook of Illinois Evidence § 801.12 (10th ed. 2010). Admission of a prior statement under this rule is "subject to the requirements of relevance and materiality." *People v. Harris*, 123 Ill. 2d 113, 142 (1988). While an additional part of a written or recorded admission of a criminal defendant that explains, qualifies, or otherwise sheds light upon that portion of the accused's statement offered by the prosecution would satisfy the completeness doctrine, a separate statement, written or recorded, made by the criminal defendant denying the events acknowledged in the statements offered by the prosecution would be inadmissible. Michael H. Graham, Graham's Handbook of Illinois Evidence § 106.1 (10th ed. 2010).

¶ 45     In the instant case, Amanda's statements from the beginning of the police interview were inadmissible under the completeness doctrine. At the start of the interview, Amanda denied seeing the defendant engage in sexual misconduct with the victim. After approximately 33 minutes, Amanda stated that she saw the defendant sexually assault the victim and that she participated in some of the acts. Amanda's statements from the beginning of the interview do not explain why she later denied the allegations, or qualify her later statements; they merely contradict the prior inconsistent statement admitted into evidence by the State. See *Wetzel*, 308 Ill. App. 3d 886; see also *People v. Steffens*, 131 Ill. App. 3d 141, 147 (1985). Consequently, Amanda's initial statements were inadmissible under the completeness doctrine.

¶ 46                                    II. $500 Fine

¶ 47     The defendant argues that the trial court erred when it imposed a $500 fine, pursuant to section 5-9-1.15 of the Code, because the statute did not go into effect until after his arrest. 730 ILCS 5/5-9-1.15 (West 2008). The State agrees.

¶ 48     The United States Constitution prohibits both Congress (U.S. Const., art. I, § 9) and the states (U.S. Const., art. I, § 10) from enacting *ex post facto* laws. *People v. Prince*, 371 Ill. App. 3d 878 (2007). Similarly, the Illinois Constitution forbids the enactment of *ex post facto* laws. Ill. Const. 1970, art. I, § 16. This prohibition applies only to laws that are punitive. *People v. Dalton*, 406 Ill. App. 3d 158 (2010).

¶ 49     We find that imposition of the section 5-9-1.15 fine violated *ex post facto* principles.

Section 5-9-1.15 of the Code went into effect on June 1, 2008, and the instant offenses occurred no later than February 2008, when the defendant was arrested on an unrelated offense. Therefore, we vacate the defendant's $500 fine.

¶ 50                                           CONCLUSION

¶ 51       For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed with the sole exception of the defendant's $500 fine, which is vacated.

¶ 52       Affirmed in part and vacated in part.

¶ 53       JUSTICE SCHMIDT, specially concurring.

¶ 54       I concur in the result. I do not concur with the author's analysis with respect to either admission of prior consistent statements or the completeness doctrine. Amanda clearly had a motive to lie when she spoke with police. The beginning of the interview therefore does not qualify as an admissible prior consistent statement. The trial court did not err in excluding the evidence.

¶ 55                                   Prior Consistent Statements

¶ 56       I part company with the author beginning at paragraph 32. Justice Carter puts forward the proposition that our supreme court has in cases such as *Cuadrado*, 214 Ill. 2d 79, incorrectly stated the law regarding prior consistent statements. In *Cuadrado*, referring to admissibility of prior consistent statements, the supreme court stated that they are admissible "when it is suggested that the witness had recently fabricated the testimony or had a motive to testify falsely, and the prior statement was made before the motive to fabricate arose." *Id.* at 90.

¶ 57       The author picks *Clark* out of a lineup of supreme court cases on the issue and, through a misreading of *Clark* and other supreme court cases, creates what he calls the "*Clark* rule." *Supra* ¶ 32. I respectfully submit that the author reads things into *Clark* that simply are not there. The author, in his postmortem of the *Clark* decision, slices and dices the language and finds that the supreme court in *Clark* created two separate exceptions to the prior consistent statement rule. *Id.* While examining *Clark*, the author concludes that he has discovered *Clark*'s holding by virtue of the disjunctive language, presumably by the use of the word "or" twice. *Supra* ¶¶ 29, 32. The trouble with this detailed dissection of *Clark* is that it is comparable to an autopsy that identifies the cause of death as coronary artery disease while ignoring the fact that the decedent had been decapitated. Immediately after the language cited in paragraph 29, the *Clark* court said, "The statement that Cleo Williams made to the police officers on January 3, 1968, does not come within the last stated *exception*. It was made several weeks after the killing and after the defendant had been identified in a lineup by witnesses to the killing. *Every motive for fabricating a false statement existed on January 3, 1968*, that existed at the time of the trial." (Emphases added.) *Clark*, 52 Ill. 2d at 389. Therefore, it seems clear that even the supreme court was unaware it was creating two separate exceptions as suggested by the author. After stating the rule, the court referred to the

-11-

last stated "exception," not "exceptions." *Id.* Then, it simply looked to whether the witness had a motive to lie at the time of the proffered prior consistent statement. The court found motive. Therefore, the court held that the trial court did not err in excluding the statement. *Clark*, 52 Ill. 2d at 389-90. I submit that there are not two distinct exceptions and never have been. The supreme court has never said there are two distinct exceptions.

¶ 58　　First of all, the "first" exception relates to a charge that not only is a witness motivated to testify falsely, but has testified falsely. That is, a prior consistent statement would never come in unless there was a charge that the witness's trial testimony was intentionally false. What is intentionally false testimony? It is a fabrication. If no one suggests that a witness's trial testimony is false, what possible difference could it make whether the witness had a motive to lie? People often tell the truth, even when motivated to lie. For example, a confession. We would, therefore, never get to the issue of motive to lie at the time of a prior consistent statement. The issue only arises after a witness is impeached with evidence suggesting that the witness lied on the stand.

¶ 59　　In this case, Amanda testified that she neither participated in the sexual assault of the victim nor observed defendant assault the victim. The State introduced a videotape of Amanda describing incidents when she witnessed and participated in the sexual assault of the child. Implicit in the impeachment testimony is that Amanda was lying when she testified. Clearly, as the author points out, Amanda had motive to lie. As someone not only married to the defendant, but also as someone who participated in the crimes, Amanda had a motive to lie from the moment the crimes occurred.

¶ 60　　In my opinion, the author actually illustrates why the two-exception theory fails when he tries to address the evidence under what he calls the "recent fabrication" exception. *Supra* ¶ 39. The "recent fabrication" is the witness's trial testimony. *Id.* The author necessarily goes on to make statements that defy reality in reference to the requirement that the record must make it readily apparent that the witness's trial testimony was a recent fabrication. The author states, "[s]uch a charge was not present in the instant case." *Id.* "[T]he record does not contain an express or implied charge that Amanda's testimony was a recent fabrication." *Supra* ¶ 40. Of course it does! Query: What other conclusion could any reasonable juror draw from watching the videotape of Amanda's confession other than, "the State wants me to believe that Amanda was lying when she testified that it did not happen"? Impeachment evidence in this case pointed to the inescapable charge that Amanda's trial testimony was a recent fabrication. If the rule is as the author describes, then the prior consistent statements were admissible. To avoid this result, while at the same time standing by the two-distinct-exceptions analysis, the author states that the record does not support a charge that Amanda's trial testimony was a recent fabrication. For reasons I have set forth, I believe that this is not healthy. When judges are required to say things that defy common understanding in order to achieve a result, the system suffers. The author cannot have it both ways. If the law is what he and Graham (Michael H. Graham, Graham's Handbook of Illinois Evidence (10th ed. 2010)) (hereinafter Graham) say it is, then the prior consistent statements come in, notwithstanding the motive to lie.

¶ 61　　Another example as to why the author's attempt to fashion a "recent fabrication" exception simply will not work is by yet another examination of paragraph 39. The author

states that the "prior consistent statement may be admitted to rebut an express or implied charge that the witness's testimony was of recent fabrication, *so long as the witness told the same story before the time of the alleged fabrication.*" (Emphasis added.) *Supra* ¶ 39. In the next sentence, the author points out that the recent fabrication is the "*witness's trial testimony.*" (Emphasis added.) *Id.* If the recent fabrication is the trial testimony, which it clearly is, and if this recent fabrication exception allows prior consistent statements so long as they were made "before the time of the alleged fabrication," then any consistent statement made by the witness before taking the stand would be admissible. Notwithstanding the appellate court cases and Graham suggesting otherwise, we always look (and have always looked) to whether the witness had a motive to lie at the time of the proffered prior consistent statement. What is a "fabrication"? It is a lie. People lie for a reason (motive). No one ever talks about what "recent" means in "recent fabrication." I submit it does not matter whether it is recent or old. In this context, "recent" can only mean after the development of some motive to lie which might be at any time before the witness takes the stand and, if one is involved in a crime, probably at the moment of the crime.

¶ 62    The author cites *Lambert*, 288 Ill. App. 3d 450, and section 801.12 of Graham in support of the dual-prong test. The author correctly quotes Graham, which posits that, " 'a prior consistent statement is admissible to rebut a charge of recent fabrication even if the prior consistent statement is inadmissible to rebut a separate charge of improper motive because the prior consistent statement was made during the time the improper motive is alleged to have existed.' " *Supra* ¶ 39 (quoting Graham, *supra*, at 799). I realize that many consider Graham the "bible" of Illinois evidence. However, as Ira Gershwin observed, "things you are liable to read in the bible, it ain't necessarily so." Graham cites *People v. Antczak*, 251 Ill. App. 3d 709 (1993), *Lambert*, 288 Ill. App. 3d 450, and *People v. Richardson*, 348 Ill. App. 3d 796 (2004), in support of this statement. *Lambert* and *Richardson*, in turn, cite Graham for this proposition of law. It appears that *Antczak* was one of the first, if not the first, cases to come up with what the author has labeled the "*Clark* rule."

¶ 63    The *Antczak* court and the author make the same mistake. *Antczak* cited the disjunctive language in *Williams* (identical to that in *Clark*) in support of the proposition that motive to testify falsely and recent fabrication are two distinct exceptions to the rule against the admission of prior consistent statements. *Antczak*, 251 Ill. App. 3d at 715-16. However, I believe that *Antczak* ignored what the supreme court did in *Williams*, 147 Ill. 2d 173. In *Williams*, the court dealt with the admissibility of a witness's grand jury testimony as a prior consistent statement. The court noted:

> "Clearly, the defense raised an inference that Gray's trial testimony was motivated by expectations of leniency and was of recent fabrication. Yet, defendant claims that Gray's 1978 grand jury testimony did not qualify as a prior consistent statement because Gray had the same motive to fabricate at that time as she did at trial. (See *People v. Emerson*[, 97 Ill. 2d 487, 501 (1983)].) According to defendant, Gray must have considered, in 1978, that, given the conduct of police and prosecutors towards her, her best strategy was to cooperate with the authorities by fabricating a version of events. We rejected a similar argument upon a similar series of facts in [*People v. Titone*, 115 Ill. 2d 413, 423 (1986)], and held that the trial court's apparent conclusion was supported by the

record and was proper. Likewise, in the instant case, we cannot say that the trial court erred by admitting Gray's grand jury testimony." *Williams*, 147 Ill. 2d at 227-28.

One cannot decipher the basis for the supreme court's holding in *Williams* on the issue without turning to *Titone*.

¶ 64     In *Titone*, under virtually identical facts as in *Williams*, the supreme court cited *Clark*, including the disjunctive language, then concluded, "[t]he circuit court, in admitting the statement, apparently concluded that the motive for fabrication did not exist when the statement was made. On this record we are unable to say that in admitting the statement the court erred. *People v. Emerson*[, 97 Ill. 2d 487, 501 (1983)]; *Lyon v. Oliver*[, 316 Ill. 2d 292, 303 (1925)]." *People v. Titone*, 115 Ill. 2d at 423. That is, in *Williams* and *Titone*, the supreme court affirmed the admission of prior consistent statements on the basis of what it perceived as findings by the trial court that the prior consistent statements were made at a time when a motive for fabrication did not exist. *Williams* simply does not support the analysis in *Antczak*. Nonetheless, Graham apparently hitched its wagon to *Antczak* and, without any supreme court authority for the proposition, takes the view of the author here. Shortly after *Lambert*, a panel of the First District appellate court in *People v. Grisset*, 288 Ill. App. 3d 620 (1997), rejected *Antczak*. *Grisset*, 288 Ill. App. 3d at 626-27. Graham is of the opinion that *Grisset* was "incorrectly decided." Graham, *supra*, at 799. I submit that until the supreme court says otherwise, Graham is wrong and it is *Antczak* that was incorrectly decided. The test *applied* by the supreme court, notwithstanding loose language describing the test, has always been: Is there a suggestion that the witness lied and, if so, was the prior consistent statement made before a motive to lie arose? This is a straightforward rule that for some reason has generated a divergence of opinions. In my opinion, this is not a good thing. Lawyers, trial judges and appellate judges need to know what the rules are. Whether I am right or wrong, I believe that it is time for the supreme court to put this issue to rest in plain English. Whether and how a witness can be rehabilitated after impeachment suggesting the witness lied (fabricated) is a recurring and important issue in trials, especially criminal trials. The resolution of the issue should not depend upon the school of thought of either the trial judge or the majority of an appellate panel.


¶ 65                                    Completeness Doctrine

¶ 66     The defendant did not argue below that the alleged prior consistent statements were admissible under the completeness doctrine. While I agree with the result reached by the author, I would not reach the merits of defendant's argument. The issue was forfeited by defendant's failure to make that argument below. *People v. Macri*, 185 Ill. 2d 1 (1998); *People v. Miller*, 173 Ill. 2d 167 (1996); *People v. Hillier*, 237 Ill. 2d 539 (2010).

¶ 67     As an aside, after reviewing the entire videotape, I am left wondering why the State even objected to the admission of the entire videotape, or why the State did not offer the entire videotape to begin with. There is simply nothing in there of help to defendant. Any error was harmless beyond a reasonable doubt.

¶ 68     JUSTICE HOLDRIDGE, specially concurring.

¶ 69     I concur in the judgment affirming the conviction and sentence imposed by the circuit court of Kankakee County with the sole exception of vacating the $500 fine. I write separately because, unlike both my colleagues, I would find that the excluded statements were admissible under the completeness doctrine, and the trial court erred in denying the defendant's attempt to enter the full videotape of the police interview of Amanda. I would find, however, that the error in excluding those statements was harmless beyond a reasonable doubt.

¶ 70     "The completeness doctrine is an exception to the hearsay rule and provides that a party may introduce the balance of an *** oral statement that has been introduced by an opponent for the purpose of explaining, qualifying, or otherwise shedding light on the statement." *People v. Brown*, 249 Ill. App. 3d 986, 990 (1993). The completeness doctrine applies if the conversation admitted into evidence was part of the same conversation that the opposing party is attempting to introduce under the completeness doctrine. *Id.* Where a portion of a conversation is related by a witness, the opposing party has the right to bring out all of the conversation. *People v. Weaver*, 92 Ill. 2d 545, 556-57 (1982). This doctrine is grounded in the general evidentiary principle that "if one party introduces part of an utterance or writing the opposing party may introduce the remainder or so much thereof as is required to place that part originally offered in proper context so that a correct and true meaning is conveyed to the jury." (Internal quotation marks omitted.) *People v. Williams*, 109 Ill. 2d 327, 334 (1985).

¶ 71     Here, the State was permitted to bring out Amanda's statements during the police interview in which she stated that she had witnessed the defendant engaged in sexual activities with the victim. This evidence was admitted in the form of videotape excerpts from a police interview lasting approximately one hour. However, when defense counsel sought to admit the videotape of the *entire* interview in order to place the statements in the State's evidence into context, the State's objection was sustained. I would find that the videotape of Amanda's statements to the police *in the same interview* should have been admitted into evidence. Those statements would have established the context of the statements the State wanted the jury to hear and would have qualified those statements in the context of Amanda's overall credibility. The failure to admit the videotape of the entire interview was clearly error, and the defense should have been allowed to present that evidence. Moreover, because the evidence was admissible under the completeness doctrine, it was admissible regardless of the fact that it was also a prior consistent statement. See *id.* at 335; *Weaver*, 92 Ill. 2d at 556. I therefore do not agree with the analysis that the statements were inadmissible as prior consistent statements. The intent of the completeness doctrine is to make sure all material statements are placed before the jury so that it will have the complete context of the statements entered into evidence.

¶ 72     Having found that the trial court erred in not admitting a complete context of her statements contained in the single interview, I would nonetheless affirm the defendant's conviction. It is well settled that where a trial court's error is not structural, *i.e.*, a serious denial of a constitutional right, such errors do not require a reversal of a defendant's conviction. *People v. Averett*, 237 Ill. 2d 1, 14 (2010). Moreover, where a defendant's guilt

is overwhelming, a single erroneous evidentiary ruling, likewise, does not warrant reversal. See *People v. Rivera*, 227 Ill. 2d 1, 26-27 (2007). Here, not only was the evidence against the defendant overwhelming, I agree with the observation that, had the entire videotape of Amanda's interview been admitted, there was nothing there that would have been of help to the defendant. While Amanda's statements would have been relevant to her credibility, it cannot be said that her entire statement to the police during the interview would have caused the jury to assess her credibility differently.

¶ 73      For the foregoing reasons only, I would affirm the trial court's judgment of conviction.