2021 IL App (1st) 181613
No. 1-18-1613
Opinion filed March 29, 2021

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 17051 |
| | ) | |
| DYWON SHEPPARD, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pierce and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1    The trial court found Dywon Sheppard guilty of two counts of aggravated domestic battery and two counts of violation of an order of protection. Sheppard received concurrent terms of five and three years in prison. Sheppard claims error in the admission of two disks containing hundreds of jail calls, six of which the State published at trial. Specifically, he challenges the relevance of the first published call and characterizes the unpublished calls as "irrelevant and prejudicial." Sheppard further contends the unpublished calls interfered with his right to present a defense, right to counsel, and right to testify.

¶ 2    We affirm. Although we agree the trial court erred in admitting the only published call Sheppard challenges, we find that error harmless, given the five published calls he does not challenge and the other evidence of his guilt. We reject his arguments about the unpublished calls—both the evidentiary error and the related fair trial claims—because nothing in the record indicates the trial court ever listened to any calls other than the six played in open court.

¶ 3                                            Background

¶ 4    Before trial, the State moved *in limine* to admit jail calls into evidence. The State noted Sheppard had made about 40 calls to the victim, Andrea Moore, and "a couple hundred" other calls. The pretrial litigation, including the State's offer of proof, was brief:

"THE COURT: She was accepting jail calls?

[STATE]: They're calls that I'd like to introduce showing the defendant's consciousness of guilt where he's discussing with his other girlfriend and family members that he plans to manipulate the victim in this case so that she won't come to court and testify and he's telling family members that he's going to have the victim send letters and things to the Public Defender.

THE COURT: What is the question you have of me?

[STATE]: Well, I'd like to use them in my case.

THE COURT: Of course you can.

[DEFENSE]: For the record, we would object. I mean, she's reporting these are calls made by the defendant to various—

THE COURT: When I say she can, she is responsible for laying the proper foundation. The rules of evidence are always in play, but the availability of the

evidence, that would be admissible. If it is what she says it is, that would certainly be admissible, relevant, and probative of the search for the truth here. Defendant was demanding trial. Discovery is always an ongoing obligation. It was some late-coming discovery, but since he is demanding trial and the State is ready for trial, we're going to proceed to trial. ***"

¶ 5     Sheppard had pled guilty in a domestic battery case involving Moore, whom he had dated for "three or four years." Moore obtained a plenary order of protection and served Sheppard in open court. After the hearing, Moore encountered Sheppard as she attempted to leave the courthouse. She "wav[ed] the Order of Protection in [her] hand" as Sheppard asked her to "take him to the neighborhood."

¶ 6     Later that day, Moore again saw Sheppard while waiting in her truck at a mechanic's shop. Sheppard "walked up, stuck his arm in the door and unlocked the door and hit [her] in [the] face," striking her "[t]wo or three" times with a closed fist. As she tried to call the police, Sheppard ran and, according to Moore, "he was like 'f*** you, fat b*** and the Order of Protection.' " Moore testified that Sheppard had bruised the right side of her face, but she did not go to the hospital.

¶ 7     The State directed Moore's attention to recordings she had listened to with prosecutors. She recognized her voice, Sheppard's voice, his mother's voice, and his girlfriend Kwinn's voice. She said she was familiar with various family members and friends of Sheppard's. Moore demonstrated familiarity with how detainees place calls from within the Cook County Department of Corrections. She explained that a recording at the beginning of each call states it is recorded and provides the caller's name. Often "[s]omebody else called for [Sheppard]," suggesting that

Sheppard would not "us[e] his own code" to dial out. Ultimately, the parties stipulated to foundational testimony for the jail calls on the two disks.

¶ 8     The State informed the trial court of its intent to play six calls that contained "probably a half-hour of audio." When the State published a call from February 1, 2018, at 4:08 p.m., Sheppard objected to playing it in its entirety in open court. He contended that the call contained "passwords to a face book [sic] page that [Sheppard] does not want—doesn't feel it would be appropriate or required by law for his face book [sic] page to be published in open court."

¶ 9     Sheppard asked for an offer of proof on relevance grounds. The State responded that the call captured a conversation between Sheppard and "who [the State] believe[s] is his brother" in which Sheppard "walk[s] him through—it sounds like he's having his brother get his phone, sign into his phone and go into his face book [sic] so that his brother can message somebody by the name of Michela Harrison and gave [sic] a phone number in order to make communication."

¶ 10     The trial court overruled Sheppard's objection, reasoning "[w]hen you're in jail, and you talk on the phones there, you know you're recorded so there is no privacy expectation anymore." The trial court acknowledged Sheppard's objection: "[I]f you're going to say something incriminating, that's going to be published in open court" and "[i]t may be published in open court if you do something that may be against your penal interest."

¶ 11     The State played the published call, in which an audibly upset Sheppard mentions he had appeared in court that day. He says "they a*** trying to book [him] *** for some bulls***." For most of the call, Sheppard attempts to coordinate collecting money from another woman so he can hire a private attorney. Sheppard, at one point, complains that Moore "wants to go forward" and that "she telling the State and the judge and them all type of other goof a*** s***, you feel me, so

I'm finna just go to trial." Confronted by the individual, he claims he "ain't been f***ing with [Moore]" and "she's just mad [he] started back f***ing with Kwinn." The individual on the phone later asks if Sheppard's talked to "mommy," and he responds, "Momma? Yeah, I just got off the phone with her. She said she had a customer. She told me call her back when she get off of work."

¶ 12    The State published four additional calls from February 1, 2018, at 6:50 p.m., 7:28 p.m., 7:55 p.m., and 8:25 p.m. Before resting its case-in-chief, the State introduced a certified copy of the plenary order of protection issued on September 28, 2017, certified copies of three previous convictions for domestic battery, and the two disks containing the published calls and hundreds of unpublished calls.

¶ 13    Sheppard testified in his defense. He largely disputed Moore's testimony and denied he struck her. On cross-examination, Sheppard admitted he called Moore about 40 times from the jail. But he did not recall telling Moore what she should say when she came to court. In response, the State published a sixth call, from April 4, 2018, at 8:42 p.m. On the call, Sheppard suggests that Moore stop cooperating with "them"—telling her, if she appears in court, she should "bust that s*** down" by saying, among other things, that she was "in [her] feelings," she loves him, and he loves her.

¶ 14    In finding Sheppard guilty, the trial court said that "[i]n looking at all of it, with the phone calls, especially, and crucially corroborating, I find Miss Moore to be credible and compelling beyond a reasonable doubt." The trial court also said Sheppard's "rendition about the reason he's calling [Moore], and the dynamics about how they happen to meet right when the Order of Protection got issued, to be fantastic and incredible, not believable." The trial court found Sheppard guilty and sentenced him to concurrent terms of five and three years in prison.

¶ 15                                    Analysis

¶ 16    Sheppard argues the trial court erred in admitting the first published call, characterizing it as "irrelevant." He also takes issue with the trial court admitting the two disks containing the six published calls, as the disks contained "hundreds of irrelevant and prejudicial phone calls." Sheppard claims these evidentiary errors deprived him of due process by interfering with his right to present a defense, right to counsel, and right to testify.

¶ 17    The State asserts the first published call was relevant and, in the alternative, harmless. Further, the record lacks evidence that the trial court heard, let alone considered, the unpublished calls.

¶ 18    We review the trial court's decision to admit evidence for an abuse of discretion. *People v. Ruback*, 2013 IL App (3d) 110256, ¶ 24. An abuse of discretion occurs where the trial court's decision to admit evidence is arbitrary, fanciful, or unreasonable to the degree no reasonable person would agree with it. *Id.*

¶ 19                              First Published Call

¶ 20    A threshold requirement for admissibility that every item of evidence must meet is relevance. *People v. Dabbs*, 239 Ill. 2d 277, 289 (2010). Relevance means "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). We assess this probability " 'in the light of logic, experience, and accepted assumption as to human behavior.' " *People v. Pike*, 2016 IL App (1st) 122626, ¶ 33 (quoting *People v. Patterson*, 192 Ill. 2d 93, 115 (2000)). Only relevant evidence is admissible. Ill. R. Evid. 402 (eff. Jan. 1, 2011).

¶ 21     We agree with Sheppard that the first published call was irrelevant and the trial court erred in admitting it. In the call, Sheppard attempts to coordinate an effort to hire private counsel. While Sheppard repeatedly disparages Moore, his complaints about her hardly make a fact in his case more or less probable. Nor do we infer consciousness of guilt from an effort to seek private counsel in place of a public defender. See *People v. Eghan*, 344 Ill. App. 3d 301, 310 (2003) (explaining evidence "deprives a defendant of a fair trial [where] it permits a jury to infer consciousness of guilt from the defendant's exercise of his rights"); *People v. Holmes*, 141 Ill. 2d 204, 217 (1990) (noting right to counsel encompasses right to select one's attorney).

¶ 22     The State maintains that the call illustrates "how [Sheppard] attempted to manipulate people." It does. Nevertheless, we disagree that it "was relevant in light of [Sheppard] attempting to manipulate [Moore] using the same methods." Aside from unsavory comments about Moore, the conversation provides no evidence supporting the State's theory that Sheppard tried to manipulate Moore to prevent her from appearing in court. It should have been excluded.

¶ 23     Having found the trial court erred in admitting the first published call, we turn to whether the error was harmless. We must determine if the erroneous admission was " 'the weight that tipped the scales against the defendant.' " *People v. Collins*, 2020 IL App (1st) 181746, ¶ 32 (quoting *People v. Parmly*, 117 Ill. 2d 386, 396 (1987)). Evidentiary error becomes harmless where no reasonable probability exists that the trial court would have acquitted the defendant absent the error. See *People v. Stull*, 2014 IL App (4th) 120704, ¶ 104 (citing *People v. Nevitt*, 135 Ill. 2d 423, 447 (1990)). The State bears the burden of establishing harmless error beyond a reasonable doubt. *People v. Montano*, 2017 IL App (2d) 140326, ¶ 124 (citing *People v. Thurow*, 203 Ill. 2d 352, 363 (2003)).

¶ 24    To decide harmlessness, we "(1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *People v. Becker*, 239 Ill. 2d 215, 240 (2010). We disagree with the State's suggestion that "the evidence was overwhelming." Viewing the first published call's content through the lens contemplated in the first *Becker* category, we find the likelihood it contributed to Sheppard's conviction exceedingly low.

¶ 25    Sheppard does not challenge the relevance of the remaining five published jail calls. In the second and third published calls, he discussed his effort to collect money for a private attorney. Also, in the third published call, he detailed his plan to have Moore write him, send him pictures, and sign up for his visitor list, explaining he would bring it all to court. On that call, he defended his strategy—declaring "she ain't the first person [he] had domestics on" and "that's how [he] was beating them and s***." Sheppard asks Moore to write him or send him pictures in the fourth, fifth, and sixth published calls. On cross-examination, Sheppard admitted to manipulating Moore in this way. He explained his intent "to show that she still want[ed] to be with [him]" before denying he had feelings for her. Sheppard testified he meant "[n]one of it" when he said on the sixth published call that, when he got out, "[he] want[ed] to be with her, and hook up with her, and have sex with her." Because the content of the first published call "added nothing new for the [trial court's] consideration" [*id.*], it did not contribute to Sheppard's conviction.

¶ 26    We find the State carried its burden of showing that the first published call's erroneous admission was harmless beyond a reasonable doubt.

¶ 27                                Unpublished Calls

¶ 28    Sheppard contends the two admitted disks contained calls that, though unpublished, prejudiced him by introducing irrelevant character evidence. We presume that in a bench trial, the judge considered only competent evidence. See *People v. McCullough*, 2015 IL App (2d) 121364, ¶ 138 (citing *People v. Naylor*, 229 Ill. 2d. 584, 603 (2008)). A reviewing court "presumes the trial judge in a bench trial knew the law and followed it and that 'presumption may only be rebutted when the record affirmatively shows otherwise.' " *People v. Robinson*, 368 Ill. App. 3d 963, 976 (2006) (quoting *People v. Thorne*, 352 Ill. App. 3d 1062, 1078 (2004)).

¶ 29    We disagree with Sheppard that the record affirmatively shows the trial court relied on the unpublished calls. He infers this from the State's reference to "calls with Sheppard's mother" during cross-examination and sentencing. According to Sheppard, "[the State] relied on the court's closed-door review [of the unpublished calls] to damagingly argue that Sheppard was a liar, manipulator, and not to be trusted." But the trial court heard Sheppard say, in the first published call, "Momma? Yeah, I just got off the phone with her. She said she had a customer. She told me call her back when she get off of work." In any event, the State's references to "calls with Sheppard's mother" fail to affirmatively show that the trial court conducted a "closed-door review" of the unpublished calls. Nothing in the record implies, let alone shows, the trial court considered the unpublished calls.

¶ 30    Along these lines, Sheppard also contends that the admission of the unpublished calls deprived him of due process. He argues (i) he was not present for the court's consideration of the calls and (ii) he could not meaningfully consult with his attorney over whether, in light of what the court heard on the calls, he should testify on his own behalf.

¶ 31    Our federal and state constitutions afford criminal defendants the general right to be present at all critical stages of the proceedings. U.S. Const., amends. VI, XIV, § 1; Ill. Const. 1970, art. I, § 8; *People v. Stroud*, 208 Ill. 2d 398, 404 (2004) (citing *People v. Lindsey*, 201 Ill. 2d 45, 55, 57 (2002). The presentation of evidence is a critical stage. *People v. Lucas*, 2019 IL App (1st) 160501, ¶ 15. In *Lucas*, we found the defendant's absence from the trial court's in-chambers review of video evidence, albeit alongside defense counsel, impacted her fundamental right to testify in her own defense—a choice belonging exclusively to the defendant. *Id.* ¶ 19.

¶ 32    But in *Lucas*, the trial court affirmatively indicated on the record that it would review video evidence outside the defendant's presence. *Id.* ¶¶ 5-7. Sheppard, however, was present when the State published the six jail calls during trial. His allegation that the trial court conducted a closed-door review of the unpublished calls lacks any support in the record and indulges in unwarranted speculation. As a result, it does not implicate Sheppard's right to present a defense, right to counsel, or right to testify.

¶ 33    Affirmed.

---

**No. 1-18-1613**

---

| | |
|---|---|
| **Cite as:** | *People v. Sheppard*, 2021 IL App (1st) 181613 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CR-17051; the Hon. James B. Linn, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Daniel H. Regenscheit, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Joseph Alexander, and David M. Shin, Assistant State's Attorneys, of counsel), for the People. |

---