# Illinois Official Reports

## Appellate Court

*People v. Watt*, 2013 IL App (2d) 120183

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TYRONE D. WATT, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0183 |
| Filed | November 21, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions and the sentences imposed for armed robbery, aggravated kidnapping and home invasion were upheld on appeal where the jury was correctly instructed on the elements of armed robbery, the appellate court rejected defendant's arguments that prior consistent statements made by the victim and one of the other participants in the offenses were improperly admitted in evidence, and his sentences were not excessive, especially in view of the terror evident in the victim's 911 call; however, defendant was entitled to a $40.75 reduction in the fines, fees, and costs imposed. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-CF-638; the Hon. Fred Foreman, Judge, presiding. |
| Judgment | Affirmed as modified. |

| Counsel on Appeal | Alan D. Goldberg and Levi S. Harris, both of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Michael G. Nerheim, State's Attorney, of Waukegan (Lawrence M. Bauer and Colleen P. Price, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices Hudson and Birkett concurred in the judgment and opinion. |

## OPINION

¶ 1    Defendant, Tyrone D. Watt, and three codefendants were charged in an 18-count indictment with offenses arising out of events on February 24, 2010, in Waukegan, Illinois. Defendant, alone, stood trial on counts I through V of the indictment. The record indicates that the three codefendants' cases were disposed of separately. Defendant appeals from the February 3, 2012, judgment order showing that he was convicted of armed robbery (720 ILCS 5/18-2(a)(2) (West 2010)), aggravated kidnapping (720 ILCS 5/10-1(a)(1) (West 2010)), and home invasion (720 ILCS 5/12-11(a)(2) (West 2010)). For the reasons that follow, we affirm as modified.

¶ 2                                    BACKGROUND
¶ 3                                  A. The Indictment
¶ 4    Defendant and codefendants George C. Bates, Roger D. Golden, and Kevin J. Martin were charged in relevant part as follows:

- Count I–"[D]efendants *** committed the offense of [home invasion], in that the said defendants, who were not peace officers acting in the line of duty, knowingly, and without authority, entered the dwelling place of Domonique Kyle *** having reason to know that Domonique Kyle was present in that dwelling place and while armed with a firearm, used force against Domonique Kyle ***."

- Count II–"[Defendants] *** committed the offense of [aggravated kidnapping], in that the said defendants while armed with a firearm, committed the offense of kidnapping *** in that they knowingly and secretly confined Domonique Kyle against her will ***."

- Count III–"[Defendants] *** committed the offense of [armed robbery], in that said defendants, while armed with a firearm, knowingly took property, being United States [c]urrency, from the presence of Domonique Kyle, by the use of force ***."
- Count IV–"[Defendants] *** committed the offense of [aggravated kidnapping], in that the said defendants, in committing the offense of kidnapping *** knowingly and secretly confined Domonique Kyle against her will while wearing masks ***."
- Count V–"[Defendants] *** committed the offense of [home invasion], in that the said defendants, who were not peace officers acting in the line of duty, knowingly, and without authority, entered the dwelling place of Domonique Kyle *** having reason to know that Domonique Kyle was present in that dwelling place, intentionally caused an injury to Domonique Kyle, in that the said defendants struck Domonique Kyle about the head ***."

¶ 5                           B. The State's Fourth Motion *in Limine*

¶ 6     The State filed a motion *in limine* seeking to introduce at trial a recording and a transcript of the 911 call the victim made to the Waukegan police at approximately 12:30 a.m. on February 24, 2010. According to the State, the call was admissible under the excited utterance exception to the hearsay rule. At the hearing on the motion, defendant objected only on the bases that not all of the victim's statements in the 911 call were excited utterances, that none of the dispatcher's statements qualified as excited utterances, and that the 911 call was cumulative. Over these objections, the trial court granted the motion.

¶ 7                           C. The Evidence at Trial

¶ 8     On February 24, 2010, the victim, who was 26 years old at the time of trial, lived in an apartment at 1030 Lakehurst Drive in Waukegan with her boyfriend, Gino Adams, and Gino's two-year-old daughter, Heaven. Gino left the apartment on February 23, 2010, at about 10 p.m. and then returned close to midnight, picked up Heaven, and left again. At that time, the victim was in bed in the bedroom. She had awakened when Gino came in, but she fell back asleep after Gino and Heaven left.

¶ 9     The victim was awakened again when she heard voices outside the door to her bedroom. Then the hallway lights came on. The victim saw three men, one in the hallway and two approaching her. One of the men who approached her had a dark-colored revolver. He was wearing plaid. The other two men wore dark clothing. All three wore masks and gloves. They asked the victim where the money and the "work" were. According to the victim, "work" meant drugs. The man with the gun went through dresser drawers and asked the victim for her jewelry. The other men were going through an armoire. One of the unarmed men ordered the victim off the bed and flipped the mattress. He said, "So you going to lie to me, bitch," and punched the victim in the left eye.

¶ 10    The victim had put on the dresser between $4,000 and $5,000 in cash, which the men took. The three men in the bedroom then led the victim into the kitchen. A fourth masked man, in dark clothing and gloves, was standing by the door to the kitchen. They all asked the victim

- 3 -

"where is the money," "where is the work," as they ransacked the refrigerator and the cabinets. Then one of the men took the victim into the bathroom, where he taped her ankles and wrists with duct tape. When the man ordered the victim to lie on the floor, she told him she was pregnant and pleaded with him not to hurt her. The man turned off the light and closed the bathroom door. The victim heard the men leave her apartment and then she freed herself and called 911. The victim testified that she was "terrified" at the moment she called 911.

¶ 11    The State moved to admit and publish the 911 recording and the transcript. Defendant objected to publishing the 911 recording without stating a basis and also objected to the use of the transcript. The court admitted both the recording and the transcript[1] but cautioned the jury that the transcript was admitted only to assist it in understanding the recording. The recording was then played for the jury. In the call, the victim related that four masked black men broke into her apartment, went through her "stuff," hit her, and locked her in the bathroom. The victim told the 911 dispatcher that one of the men was wearing a plaid shirt.

¶ 12    At approximately 12:30 a.m. on February 24, 2010, Waukegan police officer Byrd was dispatched to an address on Lakehurst Road and he asked for assistance making a traffic stop. Officers Spiewak and Tran were in the area and responded. They saw Byrd following a white vehicle at Lakehurst Road and Route 43, which is Waukegan Road. Byrd activated his overhead lights and the white vehicle slowed and pulled over. The stop occurred approximately a block or a block and a half from the victim's apartment. Byrd, Spiewak, and Tran all exited their cars and approached the white vehicle. The driver's door of the white vehicle opened and a male, identified as defendant, fell out of the white vehicle onto the road. The vehicle took off and Byrd chased it.

¶ 13    Spiewak and Tran pointed their guns at defendant, who walked away from them. Officer Spiewak testified that there was money "falling all over." He said, "I don't know from [defendant's] pockets, maybe from–it was just falling everywhere, blowing around in the wind, just blowing away."[2] Spiewak ordered defendant to get down on the ground. Defendant complied. When Spiewak searched defendant for weapons, he felt what turned out to be "clumps" and "wads" of money "in every pocket [defendant] had on his clothing." Defendant also had a black hat stuffed with money. Defendant was dressed in black clothing. The officers then transported defendant to the police station. At the police station, Spiewak counted the money he recovered from defendant at the scene. It totaled $5,633.

¶ 14    At trial, evidence of defendant's participation in the crimes was introduced through codefendant Bates. Bates had pleaded guilty to home invasion and armed robbery, in exchange for dismissal of the other charges and a sentencing range of 21 to 30 years in prison. Bates

---

[1]The 911 dispatcher had already laid a foundation for the admission of the recording.

[2]In the video of the traffic stop of the white vehicle, recorded by Byrd's in-car camera, we see the vehicle pull over and the driver's door open. Then the entire frame is obscured by a white flash, which could be the car's exhaust. The first time defendant is visible on the video, he is walking upright from the right side of the frame to the left. The roadway is dark, engulfed in a snowstorm, and the squad car's windshield, through which the dash-mounted camera is pointed, is blurred with snow and drizzle.

would not be sentenced until he completed his testimony against defendant. While Bates was in the county jail, he incurred a charge for fighting, for which he received no consideration from the State in exchange for his testimony. Bates testified that he had prior convictions of aggravated driving under the influence, kidnapping, and aggravated battery, and he had "a drug case."

¶ 15 Bates testified that he knew defendant, because defendant had a child with Bates's cousin. At approximately 3 or 4 p.m. on February 23, 2010, Bates spoke with defendant about "going to do a robbery." The idea of a robbery had originated with codefendant Martin the day before, and it was Bates's job to find a "ride," so he contacted defendant. According to Bates, defendant agreed to participate because defendant needed rent money. At about 8 p.m. on February 23, 2010, defendant picked up Bates. Defendant was driving a white car. They then picked up Martin and drove to the Lakehurst Apartments. Their target was Adams, whom they believed had narcotics and money. When they got to the Lakehurst Apartments, they discovered that the front door to the building was locked, so they needed someone to help them break into the building. Defendant called codefendant Golden. Defendant then drove the white car to Zion, Illinois, where they picked up Golden. Defendant, Golden, Martin, and Bates made a couple more stops, during which defendant procured "burglary tools"–hammers and screwdrivers. According to Bates, defendant also had a "chrome" revolver.

¶ 16 The four men returned to the Lakehurst Apartments, where defendant and Golden pried the front door open. When a car came by, the four men hid in some bushes and then watched Adams go inside the apartment building. A few minutes later, they saw Adams come out of the building, carrying a child. Adams and the child got into a car and left. According to Bates, he voiced a reservation about proceeding with the robbery, but defendant wanted to do it.

¶ 17 Bates testified that they entered the building wearing masks–hats with holes in them so they could see–and gloves. They went to the second floor, where Bates placed duct tape over the apartment doors' peepholes. According to Bates, defendant used his shoulder to break in the door to the victim's apartment and the men entered. Bates, defendant, and Golden went into the bedroom. The victim was in bed. Bates testified that he told her, "[I]t's not about you, ain't got nothing to do with you." Bates testified that he stood by the victim while defendant and Golden "ransacked" the closet. According to Bates, defendant asked the victim where the money was, and, when she told him, he grabbed something from where she was pointing. Defendant told the victim to get off the bed, then defendant flipped the mattress and hit the victim in her eye.

¶ 18 Bates testified that they took the victim into the kitchen, where Martin was looking through the cabinets. Then defendant took the victim into the bathroom. When defendant came out of the bathroom, the four men left the apartment. Bates testified that he took a number of the victim's items.

¶ 19 According to Bates, defendant drove them away from the scene. While they were on Lakehurst Road heading toward Waukegan Road, a police car began following them. Defendant pulled over to the right-hand side of the road. At that moment, Martin, who was in the front passenger seat, grabbed the steering wheel, got his foot on the gas, and fought defendant for the gear shift. Defendant got out of his seat belt and opened the driver's door.

Martin then "knocked" defendant out of the car. One police car continued to chase the white car, and another police car stopped for defendant.

¶ 20 In the snowstorm, the white car flipped over and crashed. Bates testified that he and Martin got out of the wreck and ran into a field, leaving Golden. While they were running, Martin was passing money to Bates. During their flight, Bates and Martin were captured by the police. At trial, Bates identified photographs of a revolver and hammers used in the commission of the crimes, and he identified photographs of property he had taken from the victim's apartment.

¶ 21 On cross-examination, defendant established that Bates met with prosecutors 2 or 3 days before trial, for 20 or 30 minutes, in the presence of Bates's lawyer, and was shown a statement he had written. Defendant further established that, after Bates gave a statement to a detective, the police allowed Bates and Martin to confer together for 15 or 20 minutes. On redirect, the State clarified that Bates and Martin spoke in the police station after Bates had already spoken to the police. The State also clarified that, when Bates wrote his statement for the police on the night he was arrested, he had not met with prosecutors and had no agreement with the State's Attorney's office. Then the following questions and answers were elicited:

> "Q. [PROSECUTOR:] When you wrote that statement for Detective Holman, did you tell him and write for him the same things that you have told us here today?
>
> A. [BATES:] Yes.
>
> Q. And, specifically, how many people did you tell Detective Holman did this break-in and robbery?
>
> A. Me and three other individuals.
>
> Q. What were their names?
>
> A. [Defendant], Roger and Kevin.
>
> Q. All of this information was given to the police before you met anybody from my office?
>
> A. Yes.
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Overruled."

¶ 22 Police personnel testified that they recovered and photographed a loaded revolver, two hammers, a black hat, a black glove, and items belonging to the victim, all found in the snow outside the overturned white vehicle after the chase. Forensic examination showed that the revolver was an operable firearm and that no fingerprints were recoverable. The State also established that Golden was arrested at the scene where the vehicle crashed.

¶ 23 The State rested. The court denied defendant's motion for a directed verdict, and the defense presented a stipulation that Bates had told the police that defendant and the codefendants took a small amount of heroin and crack cocaine from the victim's apartment and that Martin had snorted "a nice amount" of heroin prior to the traffic stop. The defense then rested.

¶ 24 D. The Jury Instructions

¶ 25 The jury was instructed that defendant was charged with home invasion, aggravated kidnapping, and armed robbery. Defendant did not object to the jury instructions stating that these crimes were committed while defendant was armed with a "dangerous weapon," although counts I, II, and III of the indictment charged that the offenses were committed while he was armed with a "firearm." The verdict forms relevant to this appeal, which were signed by the 12 jurors, read as follows:

"We, the jury, find the defendant, Tyrone Watt, guilty of home invasion (dangerous weapon)."

"We, the jury, find the defendant, Tyrone Watt, guilty of aggravated kidnapping (dangerous weapon)."

"We, the jury, find the defendant, Tyrone Watt, guilty of armed robbery."

The jury also returned guilty verdicts on the charges of home invasion and aggravated kidnapping that specified "(injury)" and "(hood, robe, or mask)." Following the reading of the verdicts in open court, and after the jury was discharged, the court entered convictions on the verdicts.

¶ 26 In his second amended posttrial motion, defendant contended that the jury, in returning guilty verdicts reflecting that the offenses were committed while he was armed with a "dangerous weapon," when counts I, II, and III specified a "firearm," found defendant guilty of offenses with which he had never been charged. Defendant requested that the court enter a judgment of acquittal on those counts. The trial court denied the posttrial motion. Ultimately, the court merged count I, upon which the jury found defendant guilty of home invasion while armed with a dangerous weapon, into count V, upon which the jury found defendant guilty of home invasion causing injury; and it merged count II, upon which the jury found defendant guilty of aggravated kidnapping while armed with a dangerous weapon, into count IV, upon which defendant was found guilty of aggravated kidnapping while wearing a mask. The court sentenced defendant to 26 years' imprisonment for armed robbery; 18 years' imprisonment for aggravated kidnapping (count IV); and 26 years' imprisonment for home invasion (count V), all sentences to run concurrently. Defendant was assessed fines, court costs, and fees in the total amount of $1,094. Defendant filed a timely appeal.

¶ 27                                            ANALYSIS
¶ 28                         A. Defendant's Conviction of Armed Robbery
¶ 29 Defendant first contends that we must reverse his conviction of armed robbery because the jury was not correctly instructed as to the elements of the offense. The State charged defendant with armed robbery in that defendant, while armed with a *firearm*, took money from the victim by the use of force. However, the court instructed the jury that defendant allegedly committed the offense while armed with a *dangerous weapon*. Defendant posits two alternative theories for reversal of his armed robbery conviction. First, because the jury was never instructed that being armed with a firearm was an element of the offense, it did not find defendant guilty of every element of the offense. In other words, defendant was not convicted beyond a reasonable doubt. Second, and alternatively, defendant argues that the armed robbery statute under which

- 7 -

he was indicted explicitly excludes a firearm as a dangerous weapon and thus the jury found him guilty of a nonexistent offense, which renders his conviction void. Defendant's arguments are premised on the fact that the jury instructions were based on a prior version of the statute, which was amended in 2000.

¶ 30    Whether jury instructions accurately conveyed the applicable law is reviewed *de novo*. *People v. Parker*, 223 Ill. 2d 494, 501 (2006). Jury instructions are intended to guide the jury and to assist it in its deliberations and in reaching a proper verdict. *Parker*, 223 Ill. 2d at 501. Jury instructions should be construed as a whole, and we must determine whether the instructions, as a whole, fairly, fully, and comprehensively advised the jury of the relevant legal principles. *Parker*, 223 Ill. 2d at 501. Because defendant's convictions of aggravated kidnapping and home invasion were merged into counts of the indictment not affected by the jury instructions, defendant's conviction only of armed robbery is at issue. There is no dispute that the jury was instructed pursuant to the version of the armed robbery statute in effect prior to the 2000 amendment. The issue before us is whether the error in the instructions requires outright reversal of defendant's conviction.

¶ 31    Illinois Supreme Court Rule 451(a) (eff. Apr. 8, 2013) requires that, in a criminal case, if the court determines that the jury should be instructed on a subject, and the Illinois Pattern Jury Instructions (IPI), Criminal, contain an applicable instruction, the IPI instruction shall be given unless the court determines that it does not accurately state the law. *People v. Hopp*, 209 Ill. 2d 1, 6 (2004). Here, the court gave the IPI armed robbery definition and armed robbery issues instructions. See Illinois Pattern Jury Instructions, Criminal, Nos. 14.05, 14.06 (4th ed. 2000) (hereinafter, IPI Criminal 4th Nos. 14.05, 14.06). As given here, IPI Criminal 4th No. 14.05 provided as follows:

> "A person commits the offense of armed robbery when he, while carrying on or about his person, or while otherwise armed with a dangerous weapon, knowingly takes property from the person or presence of another by the use of force or by threatening the imminent use of force."

IPI Criminal 4th No. 14.06 provided as follows:

> "To sustain the charge of armed robbery, the State must prove the following propositions:
>
> *First Proposition*: That the defendant, or one for whose conduct he is legally responsible, knowingly took property from the person or presence of Domonique Kyle; and
>
> *Second Proposition*: That the defendant, or one for whose conduct he is legally responsible, did so by the use of force or by threatening the imminent use of force; and
>
> *Third Proposition*: That the defendant, or one for whose conduct he is legally responsible, carried on or about his person a dangerous weapon or was otherwise armed with a dangerous weapon at the time of the taking.
>
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 32 The above-quoted instructions did not accurately state the law. The armed robbery statute was amended effective January 1, 2000, pursuant to Public Act 91-404 (eff. Jan. 1, 2000). Prior to the amendment, the statute provided that a person committed the offense of armed robbery if, at the time of the offense, he "carried on or about his person or otherwise was armed with a dangerous weapon." (Internal quotation marks omitted.) *People v. Washington*, 2012 IL 107993, ¶ 6. The amendment created substantively distinct offenses, based on whether the offense was committed with a dangerous weapon "other than a firearm" or whether it was committed with a "firearm." (Internal quotation marks omitted.) *Washington*, 2012 IL 107993, ¶ 6. Consequently, section 18-2(a), the statute under which defendant in our case was indicted, provided as follows:

"(a) A person commits armed robbery when he or she violates Section 18-1; a

(1) he or she carries on or about his or her person or is otherwise armed with a dangerous weapon other than a firearm; or

(2) he or she carries on or about his or her person or is otherwise armed with a firearm[.]" 720 ILCS 5/18-2(a)(1), (a)(2) (West 2010).

Here, the grand jury indicted defendant under section 18-2(a)(2), armed robbery with a firearm. By referring to a "dangerous weapon," the jury instructions did not reflect the substantive change in the law.

¶ 33 The State argues that defendant forfeited any error in the instructions. The rule in Illinois is that objections to instructions offered by an opposing party must be made at the time of the instructions conference and must be specific, otherwise they are forfeited on appeal. *Dean v. Keith's & Ralph's Tavern, Inc.*, 25 Ill. App. 3d 970, 972 (1975). Here, defendant did not object to the instructions at the conference but included the issue in his second amended posttrial motion. However, both an objection and a written posttrial motion raising the issue are necessary to preserve the issue for review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Where a defendant fails to object at trial, even though he includes the error in his posttrial motion, forfeiture still occurs. *People v. Fillyaw*, 409 Ill. App. 3d 302, 317 (2011). Defendant in our case recognizes the forfeiture, but argues three things in response: (1) the jury did not convict him beyond a reasonable doubt, which is not subject to forfeiture; (2) his conviction is void because it is of a nonexistent crime, which is not subject to forfeiture; and (3) we may review the issue under the doctrine of plain error.

¶ 34 We reject defendant's argument that his conviction is void. Defendant was indicted for an offense listed in the amended statute, and he was found guilty by the jury of "armed robbery." The written sentencing order reflects that defendant was convicted of violating section 18-2(a)(2), armed robbery with a firearm, which is an offense listed in the amended statute. Indeed, it is that order from which defendant appeals. However, Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013) provides that substantial defects in criminal jury instructions are not forfeited by failure to make timely objections if the interests of justice require. Our supreme

court has said that Rule 451(c) is coextensive with the plain-error clause of Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), and that we construe these rules identically. *People v. Herron*, 215 Ill. 2d 167, 175 (2005).

¶ 35 The plain-error doctrine allows a reviewing court to reach a forfeited error in two circumstances: (1) where the evidence is so closely balanced that the jury's guilty verdict might have resulted from the error and not the evidence; or (2) where the error is so serious that the defendant was denied a substantial right, and thus a fair trial. *Herron*, 215 Ill. 2d at 178-79. The defendant has the burden of persuasion. *People v. Woods*, 214 Ill. 2d 455, 471 (2005). Before we can find plain error, we must first determine that the trial court committed error. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 36 Under the current statute, armed robbery with a "dangerous weapon" no longer exists. For these reasons, we find that the trial court erred in giving IPI Criminal 4th Nos. 14.05 and 14.06. In our research of this issue, we found a plethora of unpublished orders from other districts in which this same error occurred. We publish this opinion to alert trial judges, defense lawyers, and prosecutors that, until the committee updates the IPI instructions, the instructions must be modified to reflect the 2000 amendment to the statute.

¶ 37 We now address whether the error rises to the level of plain error. Defendant argues that both prongs of the plain-error analysis apply. We disagree that the evidence was closely balanced. Contrary to defendant's argument that the State's entire case rested on the testimony of Bates, a "greedy" felon, the State presented evidence corroborating Bates. The victim testified that four men broke into her apartment and robbed her at gunpoint. Spiewak saw defendant fall out of the driver's side of the getaway car in which the codefendants were riding. The video shows defendant looking at the police over his shoulder and attempting to saunter away from them, while, according to Spiewak, money was billowing out of his clothing. The evidence showed that the getaway car contained a gun and items taken from the presence of the victim. Moreover, the jury considered Bates's testimony and was charged with assessing his credibility. See *People v. Matthews*, 2012 IL App (1st) 102540, ¶ 19 (the function of juries is to assess the credibility of witnesses, to determine the weight to give testimony, and to resolve conflicts or inconsistencies in the evidence).

¶ 38 We move on to consider the second prong of the plain-error analysis. The second prong deals with presumptively prejudicial errors, which must be remedied although they might not have affected the outcome. *People v. Magallanes*, 409 Ill. App. 3d 720, 733 (2011) (citing *People v. Nitz*, 219 Ill. 2d 400, 415-16 (2006)). In *Herron*, our supreme court held that a jury-instruction error rises to the level of plain error only when it " 'creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial.' " *Herron*, 215 Ill. 2d at 193 (quoting *People v. Hopp*, 209 Ill. 2d 1, 8 (2004)). Following *Herron*, in *People v. Glasper*, 234 Ill. 2d 173 (2009), our supreme court held that a presumptively prejudicial error requiring automatic reversal occurs "only" where the error is deemed "structural," *i.e.*, "a systemic error which serves to 'erode the integrity of the judicial process and undermine the fairness of the defendant's trial.' " *Glasper*, 234 Ill. 2d at 197-98 (quoting *Herron*, 215 Ill. 2d at 186). The *Glasper* court noted that, in *Neder v. United States*, 527 U.S. 1, 8 (1999), the Supreme Court

stated that it had found structural error to exist "only in a very limited class of cases." (Internal quotation marks omitted.) The *Neder* Court described that class as a complete denial of counsel, a biased trial judge, racial discrimination in the selection of a grand jury, denial of self-representation, denial of a public trial, and a defective reasonable-doubt instruction. *Neder*, 527 U.S. at 8. In *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010), our supreme court confirmed that in *Glasper* it had "equated" the second prong of plain-error review with structural error, again citing *Neder*. Here, without engaging in any further second-prong analysis, defendant categorizes the jury-instruction error as "structural." We disagree. In *Neder*, the Supreme Court held that an instruction that either omits an element or misdescribes an element is not a structural error. *Neder*, 527 U.S. at 8-10.

¶ 39    In the present case, when the instructions referred to a "dangerous weapon" rather than a "firearm," they misdescribed an element. A person charged under section 18-2(a)(1) is charged with armed robbery with a "dangerous weapon other than a firearm," while a person charged under section 18-2(a)(2) is charged with armed robbery with a "firearm." Therefore, a firearm is still a class of dangerous weapon. Because an error in an instruction that either omits an element or misdescribes an element is not a structural error (*Neder*, 527 U.S. at 8-10), automatic reversal is not required. Moreover, the jury's verdict of guilty of armed robbery in the present case was based on evidence that defendant was armed with a firearm. It follows that, in finding that defendant was armed with a "dangerous weapon," the jury implicitly found that defendant was armed with a firearm.[3] The error did not create a serious risk that the jurors incorrectly convicted defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial. See *Herron*, 215 Ill. 2d at 193. Consequently, defendant cannot prevail under a plain-error analysis. Accordingly, we affirm the armed robbery conviction.

¶ 40                              B. Prior Consistent Statements

¶ 41    Defendant next contends that his convictions of home invasion and aggravated kidnapping should be reversed because the trial court impermissibly admitted two prior consistent statements. Defendant argues that the victim's 911 call was a prior consistent statement and that the content of Bates's written statement to the police, disclosed to the jury during the State's redirect examination of Bates, was a prior consistent statement. Defendant claims that he was prejudiced when the State used these statements in closing argument to bolster Bates's and the victim's credibility.

¶ 42    The general rule is that a witness cannot be corroborated on direct examination by admission of a prior statement that is consistent with his or her trial testimony. *People v.*

---

[3]For this reason, defendant's reasonable-doubt argument also fails. Defendant asks us to adopt Chief Justice Kilbride's reasoning, in his dissent in *Washington*, that a firearm is not included in the category of dangerous weapons. *Washington*, 2012 IL 107993, ¶ 54 (Kilbride, C.J., dissenting, joined by Theis, J.). In using the language, "dangerous weapon other than a firearm," we believe that the legislature simply distinguished a "firearm" from other types of dangerous weapons, The legislature could have expressly excluded a firearm from the genus of dangerous weapons but did not do so.

*Ruback*, 2013 IL App (3d) 110256, ¶ 26. Such a statement is inadmissible hearsay and cannot be used to bolster a witness's credibility. *Ruback*, 2013 IL App (3d) 110256, ¶ 26. However, the statement may be introduced to rebut an express or implied charge on cross-examination that (1) the witness is motivated to testify falsely, or (2) the witness's testimony is a recent fabrication. *Ruback*, 2013 IL App (3d) 110256, ¶ 26. Prior consistent statements are admitted solely for rehabilitative purposes, not as substantive evidence. *Ruback*, 2013 IL App (3d) 110256, ¶ 34. Whether to admit evidence is within the trial court's discretion. *People v. Ward*, 2011 IL 108690, ¶ 3.

¶ 43   We first consider the victim's 911 call. A prior consistent statement that meets the requirements for admission as an excited utterance, sometimes called a spontaneous declaration, is admissible as an exception to the hearsay rule. *People v. Davis*, 130 Ill. App. 3d 41, 54-56 (1984). Illinois Rule of Evidence 803(2) (eff. Jan. 1, 2011) provides that an excited utterance is not excluded by the hearsay rule, even though the declarant is available as a witness. In our case, the State urged that the 911 call was admissible as an excited utterance, and the trial court properly admitted it on that basis. On appeal, defendant argues only that it was inadmissible as a prior consistent statement and he makes no argument that the call was not an excited utterance. We, therefore, reject defendant's argument.

¶ 44   Moreover, this issue is forfeited. At trial, defendant objected to the admission of the 911 call only on the bases that not all of the victim's statements were excited utterances; that none of the dispatcher's statements was an excited utterance; and that the evidence was cumulative. Defendant did not raise the additional objection he now urges on appeal, that the 911 call was barred as a prior consistent statement in spite of its nature as an excited utterance. On review, a defendant cannot change or add to the basis for his objection. *People v. McClendon*, 197 Ill. App. 3d 472, 482 (1990). A specific objection at trial eliminates all grounds not specified. *McClendon*, 197 Ill. App. 3d at 482.

¶ 45   We next consider the admission of the content of Bates's written statement to the police. This issue has also been forfeited. First, defendant did not timely object at trial. Illinois Rule of Evidence 103(a)(1) (eff. Jan. 1, 2011) requires a timely objection stating the specific ground of the objection. Second, the issue was not raised in the second amended posttrial motion. As noted, in order to preserve an error for review, a defendant must object to the error at trial and include the objection in a posttrial motion. *Enoch*, 122 Ill. 2d at 186.

¶ 46   Here, the State elicited from Bates, without objection, that (1) Bates told Detective Holman and wrote for him "the same thing that [he] told us here today"; (2) Bates told Detective Holman that he and three other individuals did the break-in and robbery; and (3) those individuals were defendant, Golden, and Martin. The State then asked Bates the following:

> "Q. [PROSECUTOR:] All of this information was given to the police before you met anybody from my office?
>
> A. [BATES:] Yes.
>
> [DEFENSE COUNSEL]: Objection."

The entire sequence that defendant now posits was error occurred without objection. When defense counsel finally interposed an objection to the question about the information having

been given to the police before Bates met with prosecutors, no basis for the objection was stated, and Bates had already answered the question. A mere objection is not enough to preserve an error for review. *York v. El-Ganzouri*, 353 Ill. App. 3d 1, 17 (2004). To preserve an error, an objection must be timely, meaning contemporaneous with the objectionable conduct, and the objecting party must identify the same basis for his objection that he will argue on appeal. *York*, 353 Ill. App. 3d at 17-18.

¶ 47    Recognizing the forfeiture by failing to include the claimed error in the posttrial motion, defendant nevertheless asserts that we may review the issue as plain error. As we noted above, the plain-error doctrine allows a reviewing court to reach a forfeited error in two circumstances: (1) where the evidence is so closely balanced that the jury's guilty verdict might have resulted from the error and not the evidence; or (2) where the error is so serious that the defendant was denied a substantial right, and thus a fair trial. *Herron*, 215 Ill. 2d at 178-79. Defendant argues only that the evidence was so closely balanced that the claimed error threatened to tip the scales against him. Defendant maintains that the evidence was closely balanced because Bates was the "meat" of the State's case and was a "felonious, greedy, criminal co-defendant." However, as we have already determined, the evidence was not closely balanced. Thus, we need not engage in the "meaningless endeavor" of determining whether error occurred. See *People v. White*, 2011 IL 109689, ¶ 148. Accordingly, we reject defendant's arguments related to the admission of Bates's prior statement to the police.

¶ 48                                                        C. Sentence

¶ 49    Next, defendant argues that his sentence was excessive. The trial court sentenced him to 26 years' imprisonment for armed robbery, 18 years' imprisonment for aggravated kidnapping, and 26 years' imprisonment for home invasion, to be served concurrently. Defendant was assessed fines, fees, and costs in the amount of $1,094. After listening to defendant's witnesses in mitigation, the trial court stated that it could not find a factor in mitigation that would cause it to impose any lesser sentences. A sentence within the statutory limits for the offense will not be disturbed unless the trial court abused its discretion. *People v. Coleman*, 166 Ill. 2d 247, 258 (1995). An abuse of discretion occurs if the trial court imposes a sentence that is greatly at variance with the spirit and purpose of the law, or is manifestly disproportionate to the crime. *People v. Stacey*, 193 Ill. 2d 203, 210 (2000). It is well established that the court has wide latitude in sentencing a defendant, so long as it neither ignores relevant factors in mitigation nor considers improper factors in aggravation. *People v. Roberts*, 338 Ill. App. 3d 245, 251 (2003).

¶ 50    Here, defendant claims that the trial court ignored the mitigating factors that defendant had a good work history and strong family ties. Defendant argues that the trial court should have considered his rehabilitative potential in light of those mitigating factors. However, in 1986 defendant was sentenced to 25 years in the Wisconsin Department of Corrections for his role in a felony murder. He escaped from the Wisconsin Department of Corrections, he was caught and returned to finish his sentence, and Wisconsin had a parole hold on defendant at the time of his sentencing in the instant case. The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring

the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The seriousness of the offense is the most important sentencing factor. *People v. Evans*, 373 Ill. App. 3d 948, 968 (2007). Here, as the trial court noted, defendant, with Bates, Martin, and Golden, planned a home invasion to get money and drugs. The four masked and armed codefendants broke into the victim's apartment while she was sleeping in her bed, and defendant hit her and tied her up in her bathroom. Her terror was palpable on the 911 call. The offenses were Class X offenses for which the sentences were well within statutory limits. We cannot say that the trial court abused its discretion.

¶ 51    With respect to the fines, fees, and costs, defendant and the State agree that defendant is entitled to a $40.75 reduction. We also agree. Accordingly, we reduce the total amount of fines, fees, and costs to $1,053.25 and amend the sentencing order to so reflect.

¶ 52                                  CONCLUSION
¶ 53    For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed as modified.

¶ 54    Affirmed as modified.