2019 IL App (2d) 160791
No. 2-16-0791
Opinion filed February 13, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Stephenson County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CM-407 |
| TIMOTHY L. BAKER, | ) ) ) | Honorable James M. Hauser, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Burke and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Timothy L. Baker, appeals from his conviction in the circuit court of Stephenson County on two counts of domestic battery (720 ILCS 5/12-3.2(a) (West 2016)), contending that the trial court committed plain error in admitting the prior consistent statements of the victim.  Because there was no plain error, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    Defendant was charged by information with two counts of domestic battery for striking and choking his stepsister (*id.*).  He opted for a jury trial.

¶ 4    The following facts are taken from the trial.  The victim was Kimberly Baux, who lived with defendant.  Baux was developmentally disabled and worked at Malcolm Eaton Enterprises

(ME). ME provided developmental training for disabled adults. Her work day was from 8:30 a.m. to 3 p.m.

¶ 5    On the morning of April 27, 2016, as Baux packed her lunch and prepared for work, defendant began to tease her about her former boyfriend. Defendant's persistent remarks angered Baux. When Baux told defendant to stop, defendant grabbed her by the throat with his left hand and pushed her against the refrigerator. As he did so, he squeezed Baux's throat. When Baux told him to leave her alone, he released his grasp.

¶ 6    Baux then went into her bedroom. As she exited the bedroom, defendant grabbed her by the arm. Baux then entered the bathroom. After she did, defendant slammed the bathroom door so hard he damaged it. Because the door was damaged, defendant obtained some tools, including a pry bar, to repair it. As Baux exited the bathroom, she saw defendant holding the bar and thought he might hit her with it.

¶ 7    Baux testified that when she arrived at ME she told a nurse and other employees about "what happened." She later told a police officer about "what had happened." Baux never specified what she said about the incident. According to Baux, the nurse took photographs of Baux's neck.

¶ 8    On cross-examination, Baux admitted that she told a police officer that defendant had grabbed her throat twice as opposed to once. She further admitted that she told the officer that defendant pushed her in the chest, causing her to fall into the basement door. Baux had been unable to identify for the officer which hand defendant used to grab her.

¶ 9    According to Baux, she and defendant had argued before April 27, 2016. At one point, defendant had told her that he would have her evicted.

¶ 10    Mark Babcock was the community liaison at ME. His duties included oversight of any allegations of abuse or neglect of any consumers, such as Baux. All staff at ME were mandatory reporters of suspected abuse and neglect. According to Babcock, consumers like Baux were particularly susceptible to abuse.

¶ 11    Babcock met with Baux around 10:50 a.m. on April 27. He described Baux as agitated and angry. He added that Baux's speech was very rapid, panicked, hurried, and jumbled. Baux told him that she had told defendant that he could not put his hands on her. According to Babcock, because Baux was afraid to return home, ME helped find her a place to stay that night.

¶ 12    At about 1 p.m. on April 27, Baux also met with David Dorsey, an adult protective services supervisor and case worker. Dorsey described Baux as very upset, sobbing, and having trouble breathing.

¶ 13    When the State asked Dorsey what Baux told him about the incident, defendant objected based on hearsay. When the trial court overruled the objection, defendant asked for an explanation. The court explained that it was admitting Dorsey's testimony about what Baux told him as an excited utterance or spontaneous declaration. Defendant did not object on any other basis.

¶ 14    According to Dorsey, Baux told him that defendant had lost his temper, screamed at her, and called her names. Defendant then grabbed her throat and shoved her into the refrigerator. She added that when she went into the bathroom and looked in the mirror she could see marks on her throat. When she told defendant about the marks, he responded that the next time he would throw her through a wall. Baux told Dorsey that, when she told defendant that she was going to report the incident at ME, he told her that if she did he would put her belongings on the porch and lock her out.

¶ 15    Dorsey observed bruises on Baux's neck.  At trial, he was shown two photographs of bruises on Baux's neck.  The record does not indicate when those photographs were taken.  According to Dorsey, the photographs fairly and accurately depicted the bruises.  He described the bruises in the photographs as "developing."  On cross-examination, Dorsey testified that he had observed bruising in the past and had been trained in the development of bruising.  Dorsey admitted that the bruises in the photographs were "starting to yellow towards purple."  The photographs were admitted into evidence.

¶ 16    While Dorsey was speaking with Baux, she received a text message.  She became upset, showed the message to Dorsey, and said that it was from defendant.  According to Dorsey, the message stated that if Baux told the police about defendant she should not return home, because she no longer lived there.

¶ 17    On April 27, 2016, Officer Jacob Maratos met with Baux at ME.  He observed bruises on her neck, which Baux told him had been inflicted by defendant.  Officer Maratos took photographs of Baux's neck that day.  He believed that the following day another officer took photographs of bruises "that appeared later."

¶ 18    Later that day, Officer Maratos went to defendant's residence.  As he approached the back door, he saw a lamp on in the living room.  He knocked on the back door and announced who he was.  After no one answered the door, he walked back toward his squad car.  In doing so, he noticed that the lamp was out.  He later learned that Baux had received a text message from defendant stating what would happen if she called the police.

¶ 19    Defendant testified that he was just having fun with Baux by teasing her about her ex-boyfriend.  Baux began screaming and using vulgar language toward defendant.  Although the argument became heated, defendant denied having touched Baux.  He admitted to slamming the

bathroom door, but claimed that the damage was minimal. According to defendant, that was why he had the pry bar in his hand when Baux exited the bathroom.

¶ 20    During closing argument, the State never referred to Baux's statements to Dorsey about the incident. The jury found defendant guilty of both counts.

¶ 21    In his motion for a new trial, defendant never raised any issue about Dorsey's testimony regarding Baux's prior statements. The trial court denied the motion for a new trial and sentenced defendant to 2 years' probation and 30 days in jail. Defendant, in turn, filed this timely appeal.

¶ 22                                          II. ANALYSIS

¶ 23    On appeal, defendant contends that the trial court plainly erred in admitting Baux's prior consistent statements through her testimony and that of Dorsey. The State responds that (1) Baux's testimony that she related what happened to third parties did not constitute prior consistent statements, and (2) because Baux's statement to Dorsey was an excited utterance, Dorsey's testimony was admissible, irrespective of whether Baux's statement was a prior consistent statement.

¶ 24    We begin by noting that defendant properly concedes that he forfeited the issue of the admissibility of Baux's testimony as to her prior statements, as he neither objected at trial nor raised it in his posttrial motion, and that he forfeited any issue as to whether Dorsey's testimony about Baux's prior statement was admissible, as, although he objected at trial, he never included that issue in his posttrial motion. See *People v. Glasper*, 234 Ill. 2d 173, 203 (2009) (to preserve an issue on appeal, a defendant must both object to the purported trial error and include it in a written posttrial motion). However, he contends that both errors are reviewable as plain error, because the evidence was closely balanced. We disagree.

¶ 25   Notwithstanding a forfeiture, we may consider an unpreserved error when (1) the evidence is closely balanced or (2) the error is so fundamental and of such magnitude that the defendant was denied a fair trial. *People v. Harvey*, 211 Ill. 2d 368, 387 (2004). Generally, we first determine whether any error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 26   We will first decide whether the admission of Baux's testimony regarding what she told others about the incident was error. It was not.

¶ 27   Generally, a prior consistent statement of a witness is inadmissible for the purpose of corroborating the witness's trial testimony. *People v. Donegan*, 2012 IL App (1st) 102325, ¶ 52. That is so because it is likely to unfairly enhance the witness's credibility solely because the statement has been repeated. *Id.*

¶ 28   Here, defendant asserts that Baux testified that she told the "same story" to others and thus testified to prior consistent statements. However, Baux never testified that she told the "same story." Rather, she testified that she told others about "what happened." She never specified what she said about the incident. Accordingly, there was no prior statement that was consistent with her testimony. Because there was no prior consistent statement, Baux's credibility was not unfairly enhanced. Thus, the admission of Baux's testimony was not error.

¶ 29   Before we decide whether the admission of Dorsey's testimony about Baux's prior consistent statement was plain error, we first address whether that testimony may be challenged as a prior consistent statement when it was admissible under an exception to the hearsay rule. Initially, relying primarily on *People v. Watt*, 2013 IL App (2d) 120183, the State contended that, even if Dorsey's testimony about what Baux told him was a prior consistent statement, it was nonetheless substantively admissible under the excited-utterance exception to the hearsay rule. Thus, the State asserted that, because the testimony was properly admitted as an excited

utterance, it did not matter whether it was inadmissible as a prior consistent statement. However, at oral argument, the State withdrew its argument. In doing so, the State pointed to Illinois Rule of Evidence 613(c) (eff. Oct. 15, 2015), which it contended now prohibits the admission of a prior consistent statement as substantive evidence under any hearsay exception. We agree.

¶ 30     Rule 613(c), as amended in 2015, states, in pertinent part, that a prior consistent statement is admissible "for rehabilitation purposes only and not substantively as a hearsay exception or exclusion." Ill. R. Evid. 613(c) (eff. Oct. 15, 2015). The plain language of Rule 613(c) precludes the admission of a prior consistent statement as a hearsay exception, including as an excited utterance. Accordingly, as the State concedes, Dorsey's testimony about Baux's prior consistent statement was improperly admitted as an excited utterance. To the extent that *Watt* held that a prior consistent statement could be admitted as an excited utterance, it is no longer efficacious in light of the subsequent amendment to Rule 613(c).

¶ 31     We turn then to the issue of whether admitting Dorsey's testimony about Baux's prior consistent statement was plain error. Because the evidence was not closely balanced, it was not.

¶ 32     Baux testified that defendant grabbed her by the throat and shoved her against the refrigerator. On the day of the incident, several employees at ME, as well as Officer Maratos, observed bruises on Baux's neck. Also, photographs showed bruising on Baux's neck. Defendant maintains that the bruising in the photographs showed yellowing and thus must have been caused by something or someone other than himself. Dorsey testified, however, that he was trained in the development of bruises and that in his opinion, although there was some yellowing in the bruises depicted in the photographs, the bruises were "developing." The bruises thus were consistent with defendant's guilt.

¶ 33    Additionally, Babcock described Baux as agitated and angry. Dorsey described her as very upset, sobbing, and having trouble breathing. She was so afraid of defendant that she refused to return home. Baux's emotional condition on the day of the incident further evinced that defendant had physically attacked her.

¶ 34    Further, when Officer Maratos went to defendant's home to speak with him, he saw a lamp on inside. After he knocked and announced his presence, no one answered the door. As he walked back to his squad car, Officer Maratos saw that the lamp had been turned off. That reasonably implied that defendant was inside the home and did not want to speak to the police. Hiding from the police showed defendant's consciousness of guilt. See *People v. Lewis*, 165 Ill. 2d 305, 350-51 (1995); *People v. Jones*, 162 Ill. App. 3d 487, 492 (1987).

¶ 35    Finally, defendant admitted that the incident escalated into a heated argument, with defendant slamming the bathroom door so hard it required repair. Clearly, defendant became very angry with Baux. That anger corroborated Baux's story that defendant choked her in a fit of rage.

¶ 36    When we view the evidence collectively, it was not closely balanced. Accordingly, no plain error occurred.[1]

¶ 37                                III. CONCLUSION

¶ 38    For the reasons stated, we affirm the judgment of the circuit court of Stephenson County. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

---

[1] Because the evidence was not closely balanced, any error in admitting Baux's testimony that she had told others what happened also was not plain.

¶ 39    Affirmed.