**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220014-U

Order filed May 22, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0014 Circuit No. 19-CF-16 |
| ANTONIO C. WEEMS, | ) ) ) | Honorable William S. Dickenson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE DAVENPORT delivered the judgment of the court.
Presiding Justice Holdridge and Justice McDade concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court did not abuse its discretion by admitting physical copies of the victim's written statement and her 911 call after she admitted, on the stand, to making the statements. Affirmed.

¶ 2     After a bench trial, the trial court found defendant, Antonio C. Weems, guilty of two counts of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2018)) and sentenced him to 180 days in the county jail and two years' probation. Defendant appeals, arguing the court abused its discretion by admitting physical copies of the victim, Janasia James-Woods's, handwritten statement and an

audio recording of her 911 call, after she acknowledged, at trial, she made the statements contained therein. We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4                    A. 911 Call and James-Woods's Written Statement

¶ 5        In January 2019, defendant and James-Woods were in a dating relationship and lived together in Kankakee with their two children.[1] On January 8, the police were dispatched to the residence after James-Woods called 911 to report a domestic incident between her and defendant. Later that night, she wrote and signed a statement detailing what prompted her to call 911:

> "I was awaken [*sic*] to [defendant] yelling[,] telling me to unlock my phone. And once I refused, he slapped me. And I got up and tried to get away and in the mist [*sic*] of that a bottle was thrown to try to hit me in the head but missed and busted the window. And then he attacked me more by pushing[,] scratching me[,] and punching me. He soon got on top of me and was continuing to punch and I pulled his hair to get him off of me and once I retrieved my phone back I called 911.

During the 911 call, James-Woods said, among other things, "he busted the window in the process of throwing something at me to get away" and "my baby was sitting right next to me when he jumped on me." After officers arrived, she said "he threw something at my head trying to hit me," "look at my arm," and "look at my neck."

¶ 6                                    B. Bench Trial

¶ 7                                    1. *James-Woods*

---

[1]Before trial, defendant and James-Woods had a third child together.

2

¶ 8    At the bench trial, James-Woods gave a different account of what occurred on January 8. Specifically, she testified that she was sleeping in her bed with at least one of their children. Defendant woke her to ask her about something he had seen on her phone. The phone was unlocked when he woke her. Defendant was "mellow," "calm," and talking in a normal tone.

¶ 9    During the interaction, defendant never struck James-Woods and never got on the bed. While she was in the bed, James-Woods threw a perfume bottle at defendant. He ducked, and the bottle hit the door, breaking a glass window. James-Woods could not recall much of what occurred after she threw the bottle. She did not recall when or why she got out of the bed or what happened after she did.

¶ 10   Thus, the State sought to admit, as substantive evidence under section 115-10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.1 (West 2020)), James-Woods's written statement and oral statements in the 911 call. To lay a foundation, the State directed James-Woods to the time, date, and place of her written statement and 911 call and asked her whether she made the specific statements contained therein. James-Woods admitted she wrote and signed the written statement and made the 911 call. She also acknowledged she made each of the specific statements therein. James-Woods explained she essentially fabricated the accusations made in her written statement and in the 911 call because she was depressed, on medication, and angry. She had just learned defendant was lying, cheating, and had a child with another woman. She wanted revenge and defendant removed from the house.

¶ 11   The State moved to admit a physical copy of the written statement under section 115-10.1. Defendant objected, explaining his objection was not foundational but, rather, the statement was not voluntary given James-Woods's testimony that she was depressed and on medication. The court admitted the physical copy of the written statement, finding it met section 115-10.1's

3

conditions for admission: (1) it narrated, described, or explained an event of which James-Woods had personal knowledge; and (2) James-Woods "acknowledged making the statement," which was written.

¶ 12 The court also admitted, without objection, three photographs of James-Woods that were taken after the police arrived. The first photograph depicts James-Woods from the chest up. She is holding her left arm out. The photograph is dark and does not appear to show any injuries. The second and third photographs depict several small scratches on James-Woods's left forearm. On cross-examination, James-Woods said her and defendant's two pit bulls had scratched her while playing earlier that day.

¶ 13 2. *Sharon Homberg*

¶ 14 Sharon Homberg, the 911 operator who received James-Woods's call on January 8, 2019, testified the 911 call had been accurately recorded onto a disc. The State moved to admit the recording under section 115-10.1. Defendant objected, this time asserting the admission of the recording itself was "superfluous," because James-Woods had not only admitted making the call but also had acknowledged making the specific statements therein. Thus, the substance of her prior inconsistent statement had already been admitted substantively under section 115-10.1. The court admitted the recording and permitted the State to publish approximately 25 seconds of the 7-minute call, in which James-Woods made the statements described above.

¶ 15 C. The Trial Court's Decision, Posttrial Motion, and Sentencing

¶ 16 The trial court found defendant guilty of both counts of domestic battery. Defendant moved for a new trial, in part arguing the court erred by admitting as substantive evidence "the 911 audio and statements by [the] victim." The court denied the motion and sentenced defendant to 180 days in the county jail, with credit for 71 days served, and two years' probation.

4

¶ 17    This appeal followed.

¶ 18                              II. ANALYSIS

¶ 19    On appeal, defendant contends the trial court erred when it admitted physical copies of James-Woods's written statement and the 911 audio (physical copies) after James-Woods admitted, on the stand, that she made the inconsistent statements contained therein.

¶ 20                           A. Standard of Review

¶ 21    The decision to admit evidence is a matter of the trial court's discretion. *People v. Becker*, 239 Ill. 2d 215, 234 (2010). Thus, we will reverse only if the trial court's decision is arbitrary, fanciful, or unreasonable. *Id.*

¶ 22                              B. Forfeiture

¶ 23    Defendant states he forfeited review of the trial court's admission of James-Woods's written statement, because his posttrial motion contended only that the admission of the 911 audio was erroneous. He nevertheless asks that we grant him relief on the forfeited issue under the plain-error doctrine. See *People v. Bannister*, 232 Ill. 2d 52, 64-65 (2008) (a party may prevail on an unpreserved claim when the error is clear and obvious and the evidence is closely balanced). It is unclear why defendant makes this concession. His motion for a new trial asserted the trial court erred by admitting as substantive evidence "the 911 audio *and* [the] statements by the victim." This would have been at least arguably sufficient to preserve both issues. But defendant's contemporaneous objection to the admission of the written statement—in which he asserted James-Woods did not voluntarily write the statement given her mental state—may not have been sufficient to preserve the claim. See *People v. Watt*, 2013 IL App (2d) 120183, ¶ 44 ("A specific objection at trial eliminates all grounds not specified."). However, we need not make this determination, because for the reasons stated below, we find no error in the admission of either

5

physical copy. See *Bannister*, 232 Ill. 2d at 65 (in a plain-error analysis, it is appropriate to first determine whether error occurred).

¶ 24                                C. The Trial Court Did Not Abuse Its Discretion
                                          by Admitting the Physical Copies

¶ 25       Defendant does not challenge the admission as substantive evidence of the James-Woods's prior statements presented through James-Woods's testimony and contained in the physical copies. Rather, defendant focuses on the admission of the physical copies. He argues that, because James-Woods acknowledged making the *inconsistent* statements contained in the physical copies, the physical copies became prior *consistent* statements. Therefore, he continues, under Illinois Rule of Evidence 613(c) (eff. Sept. 17, 2019), the physical copies were admissible only to rehabilitate James-Woods from an express or implied charge of improper influence or recent fabrication, not as substantive evidence.

¶ 26       Defendant's argument misses the mark. The physical copies were not prior consistent statements. Nor were they transformed into such merely because James-Woods, as the State attempted to lay the foundation for their admission, acknowledged making each of the specific statements contained therein. Rather, the physical copies were merely an additional mode of proving the contents of her prior statements, which were, as conceded by defendant, inconsistent with her trial testimony that defendant did not commit any offense against her and were substantively admissible. In other words, the physical copies were nothing more than physical proof of James-Woods's prior statements.

¶ 27       Moreover, Rule 613(c) is not implicated in this case. That rule applies when a party attempts to use a witness's prior statement to rehabilitate the witness's credibility by showing the witness's story did not change. Here, defendant never endeavored to establish, either expressly or impliedly, that James-Woods had recently fabricated her trial testimony that defendant did not, in

6

fact, commit the offense, and the physical copies were not offered to bolster James-Woods's trial testimony by proving she made the same statement on some prior occasion. See *People v. Perry*, 2011 IL App (1st) 081228, ¶ 80 (rule barring prior consistent statements exists because prior consistent statements needlessly bolster a witness's trial testimony). Rather, the State sought admission of, and the court admitted, the physical copies as substantive evidence of the physical copies under section 115-10.1(c)(2) of the Code (725 ILCS 5/115-10.1(c)(2) (West 2020)). Thus, we analyze the court's decision to admit the physical copies under that statute.

¶ 28       A witness's out-of-court statement, offered for the truth of the matter asserted, is hearsay and is generally inadmissible. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015); *People v. Guerrero*, 2021 IL App (2d) 190364, ¶ 44. Section 115-10.1 of the Code, which is applicable only in criminal cases, is an exception to the hearsay rule, and it permits a witness's prior inconsistent statement to be admitted as substantive evidence. 725 ILCS 5/115-10.1 (West 2020); *Guerrero*, 2021 IL App (2d) 190364, ¶ 46.

¶ 29       Section 115-10.1 reads in relevant part as follows:

> "In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if
>
> > (a) the statement is inconsistent with his [or her] testimony at the hearing or trial, and
> >
> > (b) the witness is subject to cross-examination concerning the statement, and
> >
> > (c) the statement—
> >
> > > ***

(2) narrates, describes, or explains an event or condition of which the witness has personal knowledge, and

(A) the statement is proved to have been written or signed by the witness, or

(B) the witness acknowledged under oath the making of the statement *** in his [or her] testimony at the *** trial in which the admission *** is being sought ***, or

(C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording." 725 ILCS 5/115-10.1 (West 2020); see also Ill. R. Evid. 801(d)(1) (eff. Oct. 15, 2015).

By its plain terms, section 115-10.1(c)(2) permits the admission as substantive evidence of a witness's prior inconsistent statement when the statement is written, electronically recorded, or not written or electronically recorded. The prior statement may be admitted in three ways: (1) when the statement is written, by proving the witness wrote or signed the statement and then admitting the written statement itself (725 ILCS 5/115-10.1(c)(2)(A) (West 2020)); (2) when the statement is electronically recorded, by proving the statement was accurately recorded and then admitting the recording itself (*id.* § 115-10.1(c)(2)(C)); and (3) when the statement is not written or electronically recorded, by having the witness acknowledge under oath making the statement, which constitutes the only proof of the prior statement (*id.* § 115-10.1(c)(2)(B)).

¶ 30    Here, the statements the State sought to admit were written and electronically recorded. When the State attempted to lay the foundation for their admission (see *e.g.*, *Guerrero*, 2021 IL App (2d) 190364, ¶¶ 45, 55), James-Woods acknowledged making each of the specific statements

8

contained in the physical copies, and the prior statements therefore could have been properly admitted under subsection (c)(2)(B) (725 ILCS 5/115-10.1(c)(2)(B) (West 2020)). But the State also met the requirements to have the physical copies admitted into evidence: the State proved (1) James-Woods wrote and signed the written statement, when she admitted she did so (*id.* § 115-10.1(c)(2)(A)), and (2) the statements in the 911 call had been accurately recorded, when James-Woods admitted making the call and Homberg testified the call had been accurately recorded (*id.* § 115-10.1(c)(2)(C)).

¶ 31      At best, then, defendant's argument is that the admission of the physical copies was unnecessary, repetitive, and cumulative of James-Woods's testimony. This court has repeatedly rejected similar arguments, noting section 115-10.1 places no limit on the number of prior inconsistent statements that may be admitted as substantive evidence. See *People v. White*, 2011 IL App (1st) 092852, ¶ 49 (collecting cases). If there is no limit on the number of prior inconsistent statements that may be admitted, we fail to see how the admission of the *same prior statements*, via a different mode of proof, was improper when, as here, the State proved the physical copies were admissible under sections 115-10.1(c)(2)(A) and 115-10.1(c)(2)(C). Additionally, we cannot find prejudice when the only true prejudice claimed is the prejudice of repetition. See *White*, 2011 IL App (1st) 092852, ¶ 46. In this case, the trial court certainly could have barred the admission of the physical copies, but it was under no obligation to do so. See *id.* ¶¶ 53-54.

¶ 32      In sum, we conclude the trial court did not abuse its discretion by admitting the physical copies of James-Woods's prior inconsistent statements.

¶ 33      III. CONCLUSION

¶ 34      For the reasons stated, we affirm the judgment of the circuit court of Kankakee County.

¶ 35      Affirmed.